Hillsborough,
No. 4569.

MANCHESTER *v.* MANCHESTER TEACHERS GUILD & a.

Argued February 20, 1957.
Decided March 26, 1957.

*J. Francis Roche,* city solicitor, for the plaintiff.

*McLane, Carleton, Graf, Greene & Brown* and *Jack B. Middleton* (*Mr. Graf* orally), for defendants.

LAMPRON, J. The only issue involved on this appeal is the correctness of the ruling made by the Trial Court that public school teachers do not have the right to strike against the city and that such a strike is illegal and subject to injunction.

This strike was found by the Court to have been conducted in a completely peaceful manner, without violence, picket lines, disturbances or damage to person or property. Its purpose was to obtain salary increases. The Court's ruling that the existence of individual annual teaching contracts with each teacher was not material to its decision has not been challenged by any of the parties. The law appears to be settled however, that if such contracts were of employment for a term subsisting at the time of the strike, the strike would be illegal. *Reynold* v. *Davis,* 198 Mass. 294; *Automobile Workers Union* v. *Wisconsin Board,* 336 U. S. 245, 259-260; 1 Teller, Labor Disputes and Collective Bargaining, s. 86; 31 Am. Jur., s. 198, *p.* 932. Apart from any contracts for a stated term however, and if this strike had occurred in the course of negotiations between a private employer and his employees it would not have been subject to injunction because of its lawful purpose and the reasonableness of its execution. *Opinion of the Justices,* 86 N. H. 597, 599; *Dorchy* v. *Kansas,* 272 U. S. 306, 311; MacCormack, A National Labor Policy, 31 B. U. L. Rev. 297, 298. See, *Grimes* v. *Durnin,* 80 N. H. 145; *White Mt. &c. Co.* v. *Murphy,* 78 N. H. 398.

If this strike was properly enjoined it must be because public policy renders illegal strikes by school teachers in public employment. Although that question has not been decided heretofore by this court other jurisdictions have held that public employees have no right to strike against the government be it federal, state, or a political subdivision thereof. *Norwalk Teachers' Ass'n* v. *Board of Education,* 138 Conn. 269; *Los Angeles* v. *Los Angeles &c. Council,* 94 Cal. App. (2d) 36; *Detroit* v. *AASER & MCE of A.,* 332 Mich. 237, 248-252; anno., 31 A. L. R. (2d) 1145, 1146.

It would serve no useful purpose to detail the many reasons which support this policy. Absence of the profit motive on the part of the public employer and the necessity that there be no interruption in the operation of public functions because of the

serious consequences which would ensue are some of them. However like the common-law doctrine of the State's immunity from liability for any negligence of its agents or servants while engaged in a governmental function (*Cushman* v. *Grafton,* 97 N. H. 32) as well as its immunity from suit (*Moore* v. *Dailey,* 97 N. H. 278; *D'Amours* v. *Hills,* 96 N. H. 498) the underlying basis for the policy against strikes by public employees is the doctrine that governmental functions may not be impeded. *Norwalk Teachers Ass'n* v. *Board of Education, supra;* Spero, Collective Bargaining in the Public Service, 248 Annals Am. Academy Pol. & So. Science 146-150.

"In the American system, sovereignty is inherent in the people. They can delegate it to a government which they create and operate by law . . . The government so created and empowered must employ people to carry on its task. Those people are agents of the government. They exercise some part of the sovereignty entrusted to it. They occupy a status entirely different from those who carry on a private enterprise. They serve the public welfare and not a private purpose. To say that they can strike is the equivalent of saying that they can deny the authority of government and contravene the public welfare." *Norwalk Teachers' Ass'n* v. *Board of Education, supra,* 276. This doctrine does not violate any constitutional rights of public employees. *Dorchy* v. *Kansas, supra; Railway Mail Ass'n* v. *Corsi,* 326 U. S. 88, 95. See *United States* v. *United Mine Workers of America,* 330 U. S. 258; *Adler* v. *Board of Education,* 342 U. S. 485, 492.

In the light of the increase in public employment, the disparity existing in many cases in the salary of public employees as compared to similar positions in private employment, and the enactment in recent years of legislation guaranteeing the right of private employees to bargain collectively and to strike, it may seem anomalous and unfair to some that government should deny these same rights to its employees working in similar employment. Note, 36 Va. L. Rev. 258, 259. However any modification in the common-law doctrine that the sovereignty of the State should not be hampered by strikes by public employees involves a change in public policy. It has been the consistent opinion of this court' that such a change is for the Legislature to determine rather than being within the province of the court. *Glover* v. *Baker,* 76 N. H. 393; *Heath* v. *Heath,* 85 N. H. 419; *Levesque* v. *Levesque,* 99 N. H. 147, 149. Note, 37 Cornell L. Q. 756, 761.

The only enactment by the Legislature on this subject is Laws 1955, c. 255, which amended RSA 31:3 by adding to the powers of towns and cities the power to "recognize unions of employees and make and enter into collective bargaining contracts with such unions." RSA 31:3 (supp.) This legislation removed the doubt previously existing as to the power of municipalities and other public bodies to enter into a contract with a labor union, it having been argued that to do so would constitute an abdication of the continuing legislative discretion which these bodies should exercise. *Muggford* v. *Baltimore,* 185 Md. 266; *Nutter* v. *Santa Monica,* 74 Cal. App. (2d) 292.

There had been introduced in the 1951 session of the Legislature a bill (H. B. 145) to the same effect which was not enacted into law. It had a provision, however, that contracts entered into between public officials and their employees shall be void unless they contained a provision that every employee covered by the contract, "shall be conclusively deemed to have agreed not to engage directly or indirectly, in any strike." 1951 Senate Journal 336. Defendants argue that the absence of such a prohibition in Laws 1955, c. 255, is conclusive evidence that the Legislature not only recognized the right of municipal employees to strike but did not wish to curtail it.

Defendants further argue that the right to strike is a necessary concomitant to the right to bargain collectively and that by granting the latter the Legislature necessarily intended to also grant to public employees the right to strike. Cox, Labor-Management Relations, 51 Nw. U. L. Rev. 240, 247.

In legislation affecting rights of the sovereign the intent of the Legislature to abrogate an immunity must be expressed "in 'explicit language' . . . or at least by implication of such reasonable clarity that the courts need not strain the words of the statute to reach such a conclusion." *Eastern Grain Co.* v. *Currier,* 98 N. H. 495, 496; *Moore* v. *Dailey,* 97 N. H. 278; *Ham* v. *Interstate Bridge Authority,* 92 N. H. 268. We do not see in Laws 1955, c. 255, such a clear expression of legislative intent to abrogate the right of the sovereign to be free from strikes by public employees. Furthermore said statute provides for collective bargaining contracts with unions of employees and no such contract is involved in this case.

There is no doubt that the Legislature is free to provide by statute that public employees may enforce their right to collective

bargaining by arbitration or strike. *Miami Water Works Local 654* v. *Miami,* 157 Fla. 445.

Absent such legislation the collective action of the school teachers in refusing to work for the city in order to obtain salary increases even though executed in a reasonable manner was subordinate to the right enjoyed by the city against a strike by its employees. It was therefore illegal and properly enjoined. *Los Angeles* v. *Los Angeles &c. Council, supra.* The injunction restrained the concerted action of the defendants and did not in any way impose on any individual an obligation to work against his will. See *Van Riper* v. *Traffic Tel. Worker's Fed. of N. J.,* 2 N. J. 335; 2 CCH Labor Law Rep. s. 224.

*Exceptions overruled.*

WHEELER, J., took no part in the decision; the others concurred.