Hillsborough
No. 79-141
No. 79-142

CITY OF MANCHESTER *& a.*

v.

MANCHESTER FIREFIGHTERS ASSOCIATION *& a.*

AND

NEW HAMPSHIRE PUBLIC EMPLOYEE LABOR RELATIONS BOARD

v.

SAME

March 31, 1980

*Elmer T. Bourque*, of Manchester (*Charles W. Flower, Jr.*, orally), for the plaintiffs.

*Craig, Wenners, Craig & McDowell*, of Manchester (*Vincent A. Wenners* orally), for the defendants.

DOUGLAS, J. The primary issue in this case concerns interpretation of RSA 273-A:13, the section of this State's Public Employee Labor Relations Act (PELRA) that prohibits public employee strikes.

In the late summer of 1978, the Manchester Firefighters Association and the city of Manchester were engaged in contract negotiations. Apparently under the impression that the city was not negotiating in good faith, RSA 273-A:5 I(e), and apparently in the belief that it would be fruitless to further engage in negotiation of the sort contemplated by the PELRA, the association members began a sickout, a form of job action in which members report an inability to work because of illness. The result was that Manchester fire stations were manned only with half crews.

On the day the sickout began, Saturday, September 2, 1978, the city and the Manchester Board of Fire Commissioners petitioned the Hillsborough County Superior Court (*Bean*, J.) for an injunction under RSA 273-A:13. The court responded the same day by temporarily enjoining the sickout. Over the next two days all of the officers of the association, and almost all of its members, were served with notice of the temporary injunction. The "sick" members, however, still failed to report for duty.

On September 5, 1978, the Tuesday after Labor Day, the city filed an unfair labor practice complaint, RSA 273-A:5 II(e), with the public employee labor relations board (PELRB). Both the city and the association were represented by counsel. On September 6, 1978, the PELRB ordered the association to "cease and desist" its sickout, RSA 273-A:6 III, and it urged the parties to resume negotiations at once. Pursuant to RSA 273-A:7 (Supp. 1977), the PELRB then petitioned the superior court for an order compelling compliance with the PELRB's cease and desist order of September 6. On September 7, 1978, the court ordered compliance. That same day, the court found, after a hearing, that six of eight district chiefs who had notice of the court's September 2 order were in contempt. Against each of them the court imposed a "fine" of $50 per day, from September 7, until the district chiefs returned to work. On September 12, 1978, the court, after a hearing, found the association, its officers, directors, executive board and all members in contempt of its September 2 order. It imposed a $2,000 per day fine on the association, and decreed that member firefighters would face confinement if they did not return to duty by midnight,

September 15. The firefighters returned to work before the deadline.

The association's first argument concerns sections 5 II(e), 6 I, 6 III, 7 and 13 of the PELRA (RSA ch. 273-A) as they relate to superior court jurisdiction over strikes, sickouts and similar job actions. These sections read in pertinent part as follows:

> 273-A:5 *Unfair Labor Practices Prohibited* . . . . II. It shall be a prohibited practice for the exclusive representative of any public employee . . . (e) to engage in a strike or other form of job action . . . .

> 273-A:6 *Violations.* I. The board shall have primary jurisdiction of all violations of RSA 273-A:5 . . . III. The board may issue a cease and desist order if it deems one necessary in the public interest, pending the hearing.

> 273-A:7 (Supp. 1977) *Injunctions.* The board shall petition the superior court . . . for such order . . . as may be necessary to compel obedience to an order of the board . . . .

> 273-A:13 *Strikes Prohibited.* Strikes and other forms of job action by public employees are hereby declared to be unlawful. A public employer shall be entitled to petition the superior court for a temporary restraining order, pending a final order of the board under RSA 273-A:6 for a strike or other form of job action . . . .

The association contends that because strikes and sickouts are RSA 273-A:5 violations, the PELRB has primary jurisdiction over them under RSA 273-A:6 I. It then points out that if, after considering the city's section 6 complaint, the PELRB had felt it necessary to order the firefighters to cease and desist their sickout, it could have done so under RSA 273-A:6 III. If the firefighters had failed to return to work and the cease and desist order had become final, the board could have petitioned the superior court for an obedience order under RSA 273-A:7 (Supp. 1977). The association asks this court to hold that under a statutory scheme that places such broad jurisdictional powers in the PELRB, RSA 273-A:13 must be read to allow employers access to the superior court *only* when they have already filed with the PELRB and the board is for some reason unable to act. We decline to do so.

First, we agree that sickouts are section 5 violations. They are, however, more than that; section 13 declares them to be generally "unlawful." Sickouts are, therefore, section 13 violations as well. That section clearly gives the superior court jurisdiction over section 13 complaints brought directly in the form of employer petitions for temporary injunctive relief. Of course, the temporary order may not remain in effect past the date of a subsequent final order of the PELRB.

Second, there are strong case law and public policy reasons for reading section 13 to allow employers immediate access to an equity court when faced with public employee strikes, sickouts or other job actions.

In *City of Manchester v. Manchester Teachers Guild*, 100 N.H. 507, 131 A.2d 59 (1957), this court stated the broad principle that strikes by public employees, including teachers, are illegal and subject to injunction. This holding was based on the notion that public employees are engaged in governmental functions and these functions may not be impeded. *Id.* at 510, 131 A.2d at 61. In *Timberlane Regional School Dist. v. Timberlane Regional Educ. Ass'n*, 114 N.H. 245, 317 A.2d 555 (1974), we refined the position taken in *Manchester Teachers Guild* and said that an injunction need not necessarily issue when teachers have gone on strike, and that courts, in deliberating the propriety of an injunction, may consider whether the parties have reached an impasse, whether they have bargained in good faith and "whether the public health, safety and welfare will be substantially harmed if the strike is allowed to continue." 114 N.H. at 251, 317 A.2d at 559. That this last consideration may be by far the most important in certain circumstances was made very clear in *City of Dover v. Firefighters Local 1312*, 114 N.H. 481, 322 A.2d 918 (1974), decided the same term as *Timberlane.*

> This [public health, safety and welfare] consideration is of paramount importance with respect to public employees who perform vital functions within the community, and it is unlikely that any situation would arise wherein a court would permit firemen to curtail essential services without being enjoined.

114 N.H. at 486, 322 A.2d at 921.

The above-discussed decisions all predate RSA ch. 273-A, which became effective in August 1975. In our opinion section 13

of the PELRA merely codifies the common law rule that public employee strikes are illegal and recognizes the superior court's equity power to enjoin strikes and other forms of job action if the exigencies of the situation demand it. *See generally* Superior Court Rules 160–163; RSA 491:7 (Supp. 1979). Though there was no record of the September 2 hearing, the transcript of the September 7 hearing shows that at the September 2 hearing both the city and the association were represented and that there was evidence that the sickout resulted in a serious impairment of the fire department's ability to protect the citizens' lives and property. We hold that the superior court had jurisdiction over the sickout on September 2, without regard to any filing with the PELRB, and that the injunction properly issued.

■ The association also argues that the trial court erred on September 2 in excluding evidence that the city failed to bargain in good faith. It points out that public employers have a statutory duty to bargain in good faith under RSA 273-A:3 I, and that allowing an employer to obtain an injunction without having to deal with allegations of bad faith bargaining contravenes the purpose of the PELRA. This argument is not persuasive. Section 13 is the embodiment of a legislative understanding that some strikes and job actions so seriously threaten the public safety that they may be immediately enjoined, regardless of what precipitated them.

■ The association next contends that on September 7 the city had no standing to ask that the superior court find the association in contempt of the court's September 2 injunction. We disagree. If the city could get an injunction, it could ask for its enforcement. It makes no sense to say, on the one hand, that public employers have the power to ask for injunctive relief when faced with the critical threat to health and safety posed in this case, and on the other to hold that they must sit by helplessly if the strikers ignore the court's order.

The association next asks this court to find invalid the superior court's September 7 order enforcing the board's September 6 order. The reason offered is that there was no evidence before the board on September 5 that the sickout endangered public health and safety. Therefore, it is urged, the court could not have found that there was "substantial evidence on the record considered as a whole to support the finding of the board." RSA 273-A:7 II. We reject this argument.

■ RSA 273-A:7 (Supp. 1979) provides the PELRB access to superior court equity powers of enforcement. The court *"shall issue"* an obedience order as long as the board had jurisdiction to act and there is substantial evidence supporting the board's order. (Emphasis added.) We find that there was sufficient evidence in this case. The PELRB's order of September 6 indicates that the parties met with board chairman Haseltine on September 5 and established that the firefighters were withholding their services from the city. In view of the public's continuing and critical need for adequate fire protection, this was sufficient to support the full board's subsequent order. *See* RSA 273-A:6 III; *City of Dover v. Firefighters Local 1312, supra* at 486–87, 322 A.2d at 921.

■ Finally, the association asks this court to return all fines paid into superior court as a result of the court's September 12 order. It argues that the court should remit the fines because the State of New Hampshire has filed a voluntary nonsuit and no longer claims the right to the fines in payment for firefighting services rendered by the National Guard during the strike. We disagree. The court's order imposed the fines as a means of enforcing its order, not as a means of collecting money for the National Guard. We see no reason why the court should not pay the money over to the city. *Town of Nottingham v. Cedar Waters, Inc.*, 118 N.H. 282, 385 A.2d 851 (1978).

*Affirmed.*

KING, J., did not sit; the others concurred.