Public Employee Labor Relations Board
No. 97-273

## APPEAL OF THE CITY OF MANCHESTER

(New Hampshire Public Employee Labor Relations Board)

November 23, 1999

*Thomas I. Arnold, III,* assistant city solicitor, of Manchester, by brief and orally, for the petitioner.

*Gould & Gould,* of Londonderry (*Kenneth J. Gould* on the brief and orally), for the respondent, the Manchester Police Patrolman's Association.

BROCK, C.J. The petitioner, the City of Manchester (city), appeals a decision of the public employee labor relations board (PELRB) dismissing the city's unfair labor practice petition filed against the respondent, the Manchester Police Patrolman's Association (union). We affirm.

The city is a public employer of police officers and other employees within the meaning of RSA 273-A:1, X (1999). The union is the certified bargaining agent for the approximately 150 regular full-time police officers employed by the city. The city and the union are parties to a collective bargaining agreement (CBA) for the period commencing July 1, 1991, and running through June 30, 1994. At the time of the underlying events in August and September 1996, negotiations toward a new CBA were stalled, and the parties' relationship remained in status quo. *See Appeal of Milton School Dist.*, 137 N.H. 240, 247, 625 A.2d 1056, 1061 (1993).

The annual Riverfest festival, sponsored by Riverfest, Inc., was scheduled to be held in Manchester on September 5-8, 1996. In 1994 and 1995, police officers had volunteered for extra-duty details at Riverfest, but officers did not volunteer in 1996. In August 1996, the union encouraged its members not to volunteer because it had scheduled an informational picket at Riverfest to inform the public of the lack of an agreement between the union and the city for the previous two years, and that negotiations on a new contract were stalled.

By August 27, police supervisors became aware that officers were not signing up for extra-duty Riverfest details. On August 30, the city filed a petition for an *ex parte* temporary injunction, which the Superior Court (*Perkins*, J.) denied. On September 4, the Superior Court (*Lynn*, J.) denied the city's petition for temporary injunctive relief.

The superior court reasoned that "[i]t is clear, both from the text of article 12 [of the CBA, providing for extra details by off-duty officers] and from two prior arbitration decisions dealing with the issue, that extra detail work is entirely voluntary and that no officer can be compelled to perform such duties." The court also found that, "[n]otwithstanding the refusal of [union] members to volunteer for extra detail work at Riverfest, the City unquestionably has the authority under article 9 of the CBA to compel overtime work from a sufficient number of officers to meet the policing and security needs occasioned by that event." The court also found that, based on the different formulae for determining rates of pay in articles 9 and 12, the city would likely save money by ordering officers to work under article 9 rather than requesting volunteers under article 12.

In a letter from the union to its membership following the superior court's order, the union summarized its position regarding Riverfest:

It is to be the directive of the Manchester Police Patrolman's Association that *NO MEMBER* is to *voluntarily*

work the Riverfest detail. We have met with the Chief of Police and the department will *ORDER* officers to work overtime per Article 9 of our collective bargaining agreement. Do not circumvent our accomplishments by trying to be a *"nice guy"* and volunteer to work for those officers who may be ordered to work. *You will be crossing a picket line manned by members of your OWN union.*
The officers who are ordered to work will have no choice and must work the detail. . . . If you are *NOT ORDERED* to work, *YOU HAVE A CHOICE. DO NOT VOLUNTEER AND DO NOT CROSS THE LINE.*

The city filed an unfair labor practice (ULP) petition with the PELRB, claiming that the union's communication with its members constituted a breach of the CBA and an illegal job action under RSA 273-A:13 (1999).

The PELRB found that

[t]here is no evidence that either the informational activities of the [union] or the reluctance of its membership to volunteer for extra details for the Riverfest festival deprived the City of police coverage for that event, that security for that event was compromised or that the City was unable to mandate a sufficient number of officers to work in order to provide that security and police presence. It is undisputed that extra detail coverage for Riverfest is a voluntary activity as defined by Article 9 of the CBA.

The PELRB further found that "the City was able to get the job done without Article 12 volunteers. It now cannot prevail in charges that would impair the [union's] rights to organize and administer its affairs merely because it had the expectation of volunteers or had to 'juggle' schedules." The PELRB dismissed the city's petition, and the city appealed.

On appeal, the city argues, *inter alia*, that the PELRB erred by failing to find that the union's directive requesting members not to volunteer violated RSA 273-A:13 and breached articles 12 and 26 of the CBA.

■ "The PELRB's findings of fact are deemed *prima facie* lawful and reasonable, and its order prevails in the absence of a clear showing of unreasonableness or illegality." *Appeal of Hinsdale Fed'n of Teachers*, 138 N.H. 88, 90, 635 A.2d 480, 481 (1993); *see* RSA 541:13 (1997).

As a preliminary matter, we review the applicable provisions of the CBA. Article 12 provides a procedure for off-duty officers to volunteer for extra details. Article 12 defines an extra detail as "duty performed by an off-duty police officer for an employer other than the Manchester Police Department." Officers desiring extra details under article 12 "shall submit their names in writing to the Chief of Police or his designee." Officers may also withdraw their names from the extra-duty roster. Officers volunteering for article 12 details are generally compensated at one and one-half times a single designated pay rate from the pay-scale table. Participating officers compensate the city for administering the article 12 extra-details program.

In contrast, article 9 provides a procedure for the city to require off-duty officers to accept extra work assignments as necessary. Article 9 provides that "[a]ll officers shall be required to work emergency or unscheduled overtime when requested." It further provides that "[p]lanned overtime . . . shall be assigned to officers on a voluntary basis. If insufficient officers volunteer within five (5) calendar days of the scheduled event then assignments shall be made to regular officers first, in inverse order of seniority, and auxiliary officers second, as needed." Officers ordered to work under article 9 are paid at one and one-half times their regular hourly rate.

Article 26.1 provides that "[n]o employee covered by this [CBA] shall engage in, induce or encourage any strike, work stoppage, 'sick-in', 'sick-out', slowdown or withholding of services to the City of Manchester." Article 26.2 provides: "The [union] agrees that neither it, nor any of its officers or agents, national or local, will call, institute, authorize, participate in, sanction or ratify any such strike, work stoppage, slowdown or withholding of service of [*sic*] the City of Manchester." Finally, article 26.3 provides that any employees participating in any identified misconduct "shall be subject to disciplinary action, including immediate dismissal."

We first consider whether the union's actions violated RSA 273-A:13, which provides:

> Strikes and *other forms of job action* by public employees are hereby declared to be unlawful. A public employer shall be entitled to petition the superior court for a temporary restraining order, pending a final order of the [PELRB] under RSA 273-A:6 for a strike or other form of job action in violation of the provisions of this chapter, and may be awarded costs and reasonable legal fees at the discretion of the court.

(Emphasis added.)

A "job action" generally involves union activities such as strikes, *see* RSA 273-A:5 (1999), or sickouts, *see City of Manchester v. Manchester Firefighters Ass'n*, 120 N.H. 230, 232, 413 A.2d 577, 578 (1980), in which a public employer is unable to perform its essential governmental functions, *cf. id.* at 234, 413 A.2d at 579; *Dover v. Firefighters Local 1312*, 114 N.H. 481, 485, 322 A.2d 918, 921 (1974). Unlike *Appeal of Hinsdale*, 138 N.H. 88, 635 A.2d 480, in which the CBA at issue apparently provided no mechanism for the public employer to compel the provision of required services, here the parties agreed to article 9, under which the city could ensure that sufficient officers were available to maintain public safety.

■ Although the union encouraged its members not to volunteer under article 12 for Riverfest details, the city exercised its right to compel officers to work overtime under article 9. The PELRB found that "[p]olice services, security and public safety — the essential functions of the police department — were maintained without interruption or deprivation." Accordingly, because the city could and did compel the officers to work overtime, the city's ability to perform its essential functions was not frustrated by the union's directive not to volunteer. Because the union did not undertake actions that frustrated the city's ability to perform its governmental functions, its action did not constitute a "job action" in violation of RSA 273-A:13.

■ Similarly, we conclude that there was no breach of articles 12 and 26. In its directive not to volunteer for extra-detail work at Riverfest, the union recognized its obligations under article 9. Although the union sanctioned the officers' refusal to volunteer, its express acknowledgement that "officers who are ordered to work will have no choice and must work the detail" demonstrates that it did not sanction a "withholding of services." We agree with the PELRB that, under these facts, there was neither a "withholding of services," nor any action by the union to "call, institute, authorize, participate in, sanction or ratify" a withholding of services as proscribed by article 26.2.

We have reviewed the record with respect to the city's remaining arguments and find them to be without merit and warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.