Rockingham
No. 6963

ELLEN FARRELLY & a.

v.

TIMBERLANE REGIONAL SCHOOL DISTRICT & a.

August 15, 1974

*McLane, Graf, Greene & Brown, Jack B. Middleton* and *Bruce W. Felmly* (*Mr. Middleton* orally) for the plaintiffs.

*Soule & Leslie* (*Mr. Lewis F. Soule* orally) for the defendants.

*Nighswander, Lord, Martin & KillKelley* and *Bradley F. Kidder* (*Mr. Kidder* orally) for the New Hampshire School Boards Association as amicus curiae.

GRIFFITH, J.  This is a petition for declaratory judgment and injunctive relief brought by Ellen Farrelly and other striking tenured teachers against the Timberlane Regional District School Board as a result of a vote by the defendant board, after a hearing conducted pursuant to RSA 189:14-a, not to renew the contracts of the plaintiffs for the 1974-75 school year. A hearing was held before a Master (*Leonard C. Hardwick,* Esq.) who made findings of fact and recommended that plaintiffs' request for an injunction be denied. After approval of the master's report by the Trial Court (*Morris,* J.), plaintiffs excepted to the order and filed motions

to set it aside and to supplement the record. A hearing was held on their motions before the master who recommended that they be denied. The trial court approved the master's recommendation, denied plaintiffs' motions, and reserved and transferred all questions of law raised by their exceptions.

This case arises from the continuing contract dispute and strike with which this court dealt in *Timberlane Regional School District v. Timberlane Regional Education Association,* 114 N.H. 245, 317 A.2d 555 (1974), and in *Timberlane Regional Education Association v. Crompton,* 114 N.H. 315, 319 A.2d 632 (1974). In the first *Timberlane* decision we upheld the recommendation of the master and the trial court's approval of that recommendation not to issue an injunction against the striking Timberlane teachers. In the second *Timberlane* case we held under RSA ch. 91-A (the "Right to Know" law) that the striking teachers, as citizens, had a right to the disclosure of the names and addresses of the substitute teachers who were replacing them during the strike.

On March 13, 1974, the school superintendent pursuant to RSA 189:14-a notified the striking teachers by mail that they had not been renominated to postitions in the Timberlane Regional School District. Under the same section, tenured teachers are entitled to request a hearing before the school board as well as the reasons for the superintendent's failure to renominate them. The tenured teachers did request a hearing and a list of reasons for their not being renominated. On March 22, 1974, the superintendent informed the teachers by mail that a hearing before the board had been scheduled for March 28, 1974, and listed the following as his reasons for failing to renominate them: failure to carry out their teaching responsibilities; failure to report to carry out their teaching duties; participating in a strike; and breach of contract by failing to report to work.

On March 28, 1974, a hearing was held before the school board. The teachers were represented by their chosen counsel and much of the hearing consisted of examination of the school superintendent by him. While the teachers were personally given an opportunity to bring to the board's attention any matters which they considered relevant, they chose to

leave the presentation of their case to their attorney. The board reached no decision at the March 28 hearing, meeting again on April 4, 1974. At that meeting counsel for the teachers notified the board by letter that it was disqualified from acting on the superintendent's failure to renominate them. The board disregarded that assertion and by unanimous vote found the following facts: (1) the teachers were under contract with the Timberlane District; (2) they did not report to work between February 27 and March 12, 1974; (3) they did not offer any valid reason for their absence during that time; (4) they were given full opportunity to explain why they did not return to work. Lastly, on the basis of the foregoing facts the board carried a motion to sustain the superintendent's recommendation by a vote of 7 to 2.

The first question for our determination is whether the master erred in finding that the plaintiffs had waived their right to a hearing in accordance with RSA ch. 43 by failing to seasonably object to the school board's sitting in judgment at the hearing. The master found in this regard that the school board was disqualified under RSA ch. 43 from sitting at the contract nonrenewal hearing (RSA 189:14-a), because under RSA 43:6 an officer who would not have qualified as a juror in a "civil action in which any of the parties interested in such case was a party" is disqualified from sitting at such a hearing. The master concluded, however, that the "mere fact of disqualification does not void the decision of the board" because their decision is merely voidable until properly challenged, and the plaintiffs' failure to seasonably object to the board's sitting at the hearing constituted a waiver of their right to object.

Since in our opinion RSA ch. 43 does not apply to a hearing under RSA 189:14-a, it is unnecessary for us to determine whether the master was correct in finding that the plaintiffs had waived their right to object to the school board's acting at the hearing. The hearing provisions under RSA 189:14-a are independent of the provisions of RSA ch. 43, since the latter statute is essentially the same as G.S. ch. 233 which was in existence in 1867, and the former was not enacted into law until 1957 (Laws 1957, 285:1). It cannot be reasonably

argued that the legislature intended the provisions of RSA ch. 43 to apply to RSA 189:14-a hearings. Neither the legislative history of RSA 189:14-a (*see* N.H.S. Jour. 688-89 (June 11, 1957)) nor the decisions construing that section have ever made reference to RSA ch. 43. *See Plymouth School Dist. v. State Bd. of Educ.*, 112 N.H. 74, 289 A.2d 73 (1972); *Spencer v. Laconia School Dist.*, 107 N.H. 125, 218 A.2d 437 (1966). "It is a well established principle of statutory construction that a long-standing practical and plausible interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the legislature is evidence that such a construction conforms to the legislative intent." *New Hampshire Retail Grocers Ass'n v. State Tax Comm'n*, 113 N.H. 511, 514, 309 A.2d 890, 892 (1973). To construe the strict judicial trial-like standards of RSA ch. 43 as applicable to either the hearing provisions of RSA 189:14-a or -b would be to disregard the obvious intent of the legislature in providing an exclusive and independent statutory framework for teacher nonrenomination proceedings complete with hearings at both local and state levels. *Spencer v. Laconia School Dist.*, 107 N.H. 125, 130, 218 A.2d 437, 441 (1966). The passage of such a complete statutory scheme "is a legislative declaration that whatever is embraced in the new law [RSA 189:14-a and -b] shall prevail, and whatever is excluded [RSA ch. 43] is discarded." *Tilton v. Sanbornton*, 78 N.H. 389, 394, 100 A. 981, 983 (1917). Clearly no school board would be qualified to act as decision-maker under RSA 189:14-a if the standards of RSA ch. 43 were applied and the decision would thus "be surrendered to a body less familiar with relevant considerations and not responsible under state and local law for making these decisions." *Simard v. Board of Educ.*, 473 F.2d 988, 993 (2d Cir. 1973).

While for reasons hereinafter stated we do not find that plaintiffs as tenured teachers were entitled to the benefits of RSA 189:14-a, it does not appear from the facts of this case that they were denied due process at the hearing they received. The master found and the record indicates that they were accorded a full and fair hearing with an opportunity

to cross-examine witnesses who appeared against them. Plaintiffs' assertion that they were denied due process because the school board's prior involvement in the case rendered it impossible for them to act as an impartial decisionmaking body, is unsupported by any showing of actual bias or prejudice and it is well established that prior involvement in itself is not a sufficient ground to bar a statutory administrative body from acting as decisionmaker at an otherwise full and fair hearing. *Quinn v. Concord,* 108 N.H. 242, 244-45, 233 A.2d 106, 108 (1967); *N.H. Milk Dealers' Ass'n v. Milk Control Board,* 107 N.H. 335, 338-39, 222 A.2d 194, 198 (1966); *Goldberg v. Kelly,* 397 U.S. 254, 271 (1970); *Wilson v. Lincoln Redev. Corp.,* 488 F.2d 339, 342 (8th Cir. 1973); *Simard v. Board of Educ.,* 473 F.2d 988, 993 (2d Cir. 1973).

The parties and the master presumed in this case that plaintiffs had retained their tenured status and so were entitled to the benefits of RSA 189:14-a. If this were a strike arising out of an ordinary labor dispute the master would be correct in holding by inference that the plaintiffs had not lost their status as employees and were therefore entitled to benefits of their employment provided by statute. *NLRB v. Fleetwood Trailer Co., Inc.,* 389 U.S. 375 (1967); 29 U.S.C.A. § 152 (3) (1973). However their continued status as teachers was not guaranteed during the strike if the strike were illegal (*Auto. Workers v. Wisconsin Bd.,* 336 U.S. 245 (1949)) or in violation of an employment contract. *NLRB v. Sands Mfg. Co.,* 306 U.S. 332 (1939).

*Timberlane Regional School District v. Timberlane Regional Education Association,* 114 N.H. 245, 317 A.2d 555 (1974), did not declare a strike by public employees legal. Rather it reaffirmed the ruling in *Manchester v. Guild,* 100 N.H. 507, 131 A.2d 59 (1957), and noted that in most jurisdictions a strike by public employees is prohibited either by statute or by judicial decision. Annot., 37 A.L.R.3d 1147, §§ 2, 3 (1971, Supp. 1973); 3A C. Antieau, Independent Local Government Entities § 30C.15, at 30C-44 (1970); 16 E. McQuillin, Municipal Corporations § 46.13, at 704 (3d ed. rev. 1972). "It is not a proper judicial function to make policy judgments as to the merits of providing public employees

with the right to strike or of developing alternative processes such as compulsory mediation or arbitration to resolve government labor disputes .... [citations omitted] This decision must be made by the legislature." *Timberlane Regional School Dist. v. Timberlane Regional Educ. Ass'n,* 114 N.H. 245, 249, 317 A.2d 555, 557-58 (1974); *Dover v. Firefighters Local 1312,* 114 N.H. 481, 322 A.2d 918 (1974). When the plaintiffs elected to engage in an illegal strike, the defendant was not required to continue to treat them as employees and accord them the rights of tenured teachers. *National Educ. Ass'n, Inc. v. Lee Cty. Bd. of Public Instr.,* 467 F.2d 447 (5th Cir. 1972); *Miller v. Noe,* 432 S.W.2d 818 (Ky. 1968); *Miller v. Board of Educ.,* 452 F.2d 894 (6th Cir. 1971).

In *Manchester v. Guild,* 100 N.H. 507, 131 A.2d 59 (1957), the relevancy of the individual teaching contracts to the legality of the strike was noted. The plaintiffs in this case struck during the term of their employment contracts, thereby breaking and abandoning their contracts. The statutory safeguards provided by RSA ch. 189 were intended to protect tenured teachers from arbitrary or unreasonable actions of school authorities while the teachers are under contract. N.H.S. Jour. 688-89 (June 11, 1957). These provisions, however, cannot be read to the exclusion of the ordinary rules of contract law, which are also applicable to contracts between teachers and school boards. *Edgecomb v. Traverse City School Dist.,* 341 Mich. 106, 116, 67 N.W.2d 87, 91 (1954); 3A C. Antieau, Independent Local Government Entities § 30C.14, at 30C-42 (1970). Whether the plaintiff's voluntary cessation of their teaching duties is referred to as a strike, a walkout or a de facto resignation, the record indicates that they left their teaching posts on February 27, 1974, have not yet returned and expressed no willingness to return when the district superintendent indicated that they would be renominated if they did so. Under these circumstances, the actions of the plaintiffs justified the school board in viewing its contracts with the plaintiffs as terminated through abandonment. "One who is himself guilty of a wrong for breach of a contract ... should

not seek to hold his counter-promisor liable." 6 S. Williston, Contracts § 813, at 5, 6 (3d ed. 1962); *Larose v. Porter,* 87 N.H. 241, 245, 177 A. 297, 299 (1935); *Jakober v. E.M. Loew's Capitol Theater, Inc.,* 107 R.I. 104, 265 A.2d 429 (1970); *see* Restatement (Second) of Contracts § 266, at 67 (Tent. Draft No. 8, 1973). It cannot be said that plaintiffs retained "an objective expectancy of reemployment" (*National Educ. Ass'n, Inc. v. Lee Cty. Bd. of Pub. Instr.,* 467 F.2d 447, 452 (5th Cir. 1972); *Ferguson v. Thomas,* 430 F.2d 852 (5th Cir. 1970)), and they have thereby placed themselves in the same position as untenured teachers who may be discharged without a hearing. *Board of Regents v. Roth,* 408 U.S. 564, 567 (1972); *see Fletcher v. Civil Serv. Comm'n,* 6 Ill. App. 3d 593, 286 N.E.2d 130 (1972); *United Fed'n of Postal Clerks v. Blount,* 325 F. Supp. 879 (D.D.C. 1971).

*Petition denied.*

GRIMES, J., did not sit; the others concurred.