State Board of Education
No. 98-473

APPEAL OF TIMOTHY MORRILL

(New Hampshire State Board of Education)

January 19, 2001

*James F. Allmendinger*, of Concord, staff attorney, NEA-New Hampshire, by brief and orally, for the petitioner.

*Philip T. McLaughlin*, attorney general (*Nancy J. Smith*, assistant attorney general, on the brief and orally), for the State.

BROCK, C.J. The appellant, Timothy Morrill, seeks review of the revocation of his Experienced Educator Certificate by the State Board of Education (board) for lack of good moral character. We affirm.

The record supports the following facts. From 1976 until his suspension in 1997, Morrill taught at Pelham High School. In 1993, he became a minister by completing the RHEMA Correspondence Bible School Course and subsequently formed a church, "Fellowship In His Love." Morrill was pastor of the church which was located in his home in Sandown.

On December 26, 1995, a complaint was filed with the Sandown Police Department alleging that Morrill was behaving inappropriately with a thirteen-year-old girl (victim) who attended his ser-

vices. A police investigation ensued, culminating in the issuance of an arrest warrant for Morrill for simple assault on a minor female. On May 6, 1997, he pleaded *nolo contendere* and was found guilty. He was sentenced to twelve months in the house of correction, deferred for up to twenty-four months on the condition that he obtain a sex offender evaluation. Additionally, Morrill was prohibited from having unsupervised contact with minors under sixteen years of age in his home.

In June 1997, school officials received notice of the proceedings against Morrill. Morrill was suspended from his teaching position, *see* RSA 189:31 (1999), and the New Hampshire Department of Education (department) began an investigation into his activities. The department became aware of allegations made in 1989 against Morrill by a former foster daughter, who claimed that he had sexually abused her. In 1989, as a result of those allegations, the division for children, youth, and families (DCYF) denied a license application by Morrill and his wife to provide day care in their home.

The department sought to revoke Morrill's teaching certificate pursuant to New Hampshire Code of Administrative Rules (Rules), Ed 200 and 510 because he had been found guilty of simple assault on a minor female. The department claimed that his actions violated a number of provisions of Rule Ed 511, the Code of Ethics for the New Hampshire Teaching Profession, which provides that a teacher shall protect the student from physical harm, refrain from using his position to take advantage of students, and respond to parents' concerns.

After four days of hearings, the hearing officer recommended the revocation of the certificate. In her recommendations, the hearing officer stated, in part:

> The facts show by a preponderance of the evidence that Mr. Morrill has a history which shows a pattern of serious inappropriate conduct toward adolescent females, utilizing his positions of authority to overpower them. Timothy Morrill's inappropriate actions, behaviors, admissions, and rationale demonstrate a serious disregard for children under his supervision and care as demonstrated by the events which involved [the victim], [a former foster daughter], and possibly other adolescent females.
>
> Ed 511, Code of Ethics, outlines a teacher's responsibilities to students, parents, their professional service, and the community. Mr. Morrill's inappropriate conduct is

clearly in violation of this Code and he lacks good moral character.

The board sustained the findings and conclusions of the hearing officer and revoked the certificate. The board determined that Morrill "engaged in irresponsible and inappropriate conduct relating to [the victim] in the 1995 timeframe, said conduct reflecting that Timothy J. Morrill lacks good moral character to be a New Hampshire teacher." The board denied Morrill's motion for a rehearing.

Morrill filed this appeal pursuant to RSA 541:6 and Supreme Court Rule 10. He contends that the jurisdictional basis for this appeal is RSA 21-N:11, III, which provides that the board shall hear appeals and issue decisions, which shall be considered final decisions for purposes of RSA chapter 541. RSA 21-N:11, III (1988). *But see Petition of Breau,* 132 N.H. 351, 357, 565 A.2d 1044, 1048 (1989). Given the State's apparent acquiescence that the board's decision is appealable under RSA chapter 541, we will assume without deciding that this action is properly before this court in accordance with RSA chapter 541.

On appeal, Morrill argues that: (1) the revocation of his teaching certification was unreasonable and unlawful because there is no nexus linking his conduct outside of school and his fitness to teach; (2) the revocation was unreasonable because it was based on reasons not included in the notice of revocation; (3) the board did not have the power to revoke his certificate for reasons not stated in the statute or in the certification regulations; (4) the revocation infringed on his sincerely held religious beliefs because it was based on purely religious conduct; and (5) he is entitled to immunity from liability because he reported suspected neglect of the victim by her parents.

We will not overturn the board's decision absent an error of law "unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable." RSA 541:13 (1997). On appeal, the party seeking to set aside the board's order bears the burden of demonstrating that it is clearly unreasonable or unlawful. *Id.* The board's findings of fact are considered by this court to be *prima facie* lawful and reasonable. *Id.; Appeal of Kruzel,* 143 N.H. 681, 684, 732 A.2d 452, 455 (1999).

*I. Nexus*

Morrill first argues that the board acted unlawfully and unreasonably when it revoked his teaching certificate for misconduct

which occurred outside of school with a non-student because no evidence demonstrated a nexus between that conduct and his fitness and ability to teach. He contends that his activities outside of the classroom should be only considered if there was a showing that his actions had a detrimental effect on his ability to teach and that he acted with sexual intent. Morrill argues that testimony from his colleagues of his successful job performance and from licensed counselors that he was not a threat to students demonstrate that his ability to teach was not affected.

■ Initially, we do not find any requirement that Morrill's classroom behavior be the sole basis for determining his fitness to teach. *See, e.g., Beilan v. Board of Education*, 357 U.S. 399, 406 (1958). A school board may terminate a teacher for conduct outside of school if there is a sufficient nexus between the conduct and "the board's legitimate interest in protecting the school community from harm." *Lile v. Hancock Place School Dist.*, 701 S.W.2d 500, 506 (Mo. Ct. App. 1985).

We hold that the record contains sufficient evidence of a nexus between Morrill's outside conduct and his fitness and ability to teach in the classroom. The evidence included the following. In 1995, the victim began attending church services in Morrill's home. Shortly thereafter, Morrill initiated the practice that the victim had to give him "holy kisses" on the mouth and "holy hugs" when she entered or left the house, and at other times, including during her tutoring. Morrill engaged in other inappropriate conduct with the victim. For example, while on a church retreat to Rhode Island, Morrill made her feel uncomfortable by putting his arm around her, placing his hand on her leg, and holding her hand.

Before the start of the 1995-1996 school year, the Morrills volunteered to tutor the victim at their home because she was having trouble learning in school. During the tutoring, Morrill continued to insist that the victim give him "holy hugs" and "holy kisses" on the mouth when she entered or exited his home, as well as during any study breaks. In November 1995, the victim complained to Morrill's wife that she no longer wanted to be kissed by him and that his actions made her feel uncomfortable. The victim repeated that statement to her mother. The victim's mother told Morrill that he was no longer to give "holy kisses" to the victim, but he continued with "holy hugs" and began kissing the victim again after a couple of weeks.

The hearing officer also heard other evidence of Morrill's attempted influence over the upbringing of the victim. For example, in

early December 1995, the Morrills took the victim to the Parkland Medical Center, claiming that her parents were negligent in their medical treatment of her. The Center's staff encouraged them to call DCYF. A subsequent DCYF investigation found that the Morrills' claims were unsubstantiated. DCYF also stated:

> Mr. Morrill did have inappropriate contact with [the victim] . . . which continued after [the victim] stated to Mr. Morrill that it made her uncomfortable. Such contact included hand holding, hugging, touching of the knee and kissing. Mr. Morrill used his position of authority to allow the contact to continue.

■ The evidence also demonstrates that Morrill's actions were related to his fitness and ability to teach. A teacher is entrusted by the board and the community to supervise and educate students. *See Lile*, 701 S.W.2d at 507. *See generally Marquay v. Eno*, 139 N.H. 708, 662 A.2d 272 (1995). A court order forbidding unsupervised contact in his home with minors under sixteen years of age raises concern about Morrill's fitness to carry out those responsibilities. This concern could have only been intensified by other evidence, including a report from Morrill's sex offender evaluation that, although his actions were not consistent with "classic pedophilia," "[his] history . . . suggests a heightened risk for less than ideal judgment should an extended relationship be allowed to develop from within the confines of his personal domain." Conduct leading to an assault against a minor female is a serious matter, especially in this context when Morrill was told to stop kissing her because it made her uncomfortable. We agree with the hearing officer that this conduct demonstrates "serious disregard for children under his supervision and care." Parents and school administrators would reasonably be concerned about the well-being and education of children in such an environment. *See Tomerlin v. Dade County School Board*, 318 So. 2d 159, 160 (Fla. Dist. Ct. App. 1975). Such a loss of trust negatively affects Morrill's fitness and ability to perform as a teacher. *See id.*

## II. Notice of Revocation

Morrill argues that the hearing officer and the board erred by relying on the sexual abuse allegations made by Morrill's former foster daughter. Because the notice of revocation states only that he had "been found guilty of assault of a minor age female and court ordered to undergo a sex offender evaluation," Morrill argues that

the hearing officer and the board should not have considered other allegations.

■ At the hearing, the hearing officer stated that the former foster daughter's allegations were admitted solely for the purpose of

> showing intent on the part of [Morrill] with regards to the current events that took place. Since there has not been any specific mention of the fact that those are actually the basis for the credentials being removed, or for the credentials being in question, I'm not going to allow an overall introduction of all that evidence as a total picture of actions in which the credentials are in question.
>
> . . . .
>
> . . . I am, however, going to allow it for the purpose of showing ongoing actions which indicate potential intent on the part of the current charges and the current events.

The board revoked Morrill's teaching credentials because he "lacks good moral character." We have held that in administrative hearings, "[c]urrent fitness and competence are proved by . . . conduct in the past." *Petition of Smith*, 139 N.H. 299, 306, 652 A.2d 154, 159 (1994). The board stated that it was revoking the teaching certificate, not based on the former foster daughter's allegation, but because "Morrill engaged in irresponsible and inappropriate conduct relating to [the victim] in the 1995 timeframe, said conduct reflecting that [he] lacks good moral character to be a New Hampshire teacher." Under these circumstances and given the evidence, we cannot conclude that the hearing officer or the board used the allegations improperly.

■ Morrill further argues that because the notice of revocation only referenced his conduct with the victim, he was provided with insufficient notice that his former foster daughter's allegations would be before the hearing officer. We disagree. In an administrative licensing procedure, "[t]he test for adequacy of notice is whether the defendant has received notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Petition of Smith*, 139 N.H. at 305, 652 A.2d at 158-59 (quotation omitted). The record shows that well before the hearing Morrill was on notice that the department intended to introduce statements of his former foster daughter and ex-wife as they were

clearly included on the exhibit list. *Cf. State v. Johnson*, 130 N.H. 578, 586, 547 A.2d 213, 218 (1988) (allowing State to use evidence of prior acts to prove case in which one instance was at issue). He was advised that revocation was being sought because of his "unprivileged physical and/or sexual contact with minor children." Moreover, Morrill's counsel filed a motion to exclude from the hearing matters relating to his former foster daughter's allegations.

### III. Reason for Revocation

Morrill argues that the board could not revoke his teaching certificate for "lack of good moral character" because Rule Ed 506.04, which provided for revocation of teaching credentials on that ground, expired before the proceedings and the revocation. He further argues that his conviction of simple assault against a minor female and his being ordered to undergo a sex offender evaluation are insufficient grounds for revoking his teaching certificate under either the rules or the statutes. *See* RSA 189:14-c (1999).

Rule Ed 506.04 provided that teaching credentials could be revoked "for good cause which includes . . . lack of good moral character." When the rule expired, its specific language was not readopted. Instead, on October 5, 1996, Rule Ed 511, the Code of Ethics for the New Hampshire Teaching Profession, was adopted. *See* N.H. ADMIN. RULES, Ed 511. The new rule enumerated responsibilities teachers have to their students, the public, and parents. *See id.*

█ Generally, substantive changes to statutes or rules are applied prospectively. *See Eldridge v. Eldridge*, 136 N.H. 611, 613, 620 A.2d 1031, 1032 (1993). The board revoked Morrill's teaching certificate for his conduct in 1995, well before the expiration of Rule Ed 506.04. Because we conclude that reliance on the substantive standard of "lack of good moral conduct" was not unjust or unreasonable, we need not reach Morrill's remaining arguments on this issue.

### IV. Infringement on Religious Beliefs

Morrill argues that the board impermissibly infringed on his sincerely held religious beliefs in violation of the Federal and State Constitutions because his teaching certificate was revoked for purely religious conduct. Specifically, he contends that the Rules are discriminatorily applied and that similar non-religious conduct would not be questioned. We disagree. We address the State constitutional claim first. *See State v. Ball*, 124 N.H. 226, 231, 471

A.2d 347, 350 (1983). We "confine our analysis to the State Constitution because the Federal Constitution affords the defendant no greater protection on this issue." *Appeal of Trotzer*, 143 N.H. 64, 71, 719 A.2d 584, 589 (1998) (citation omitted).

■ "The New Hampshire Constitution prohibits the State from revoking [Morrill's] license for his religious views but does not prohibit revocation for acts that otherwise constitute unprofessional conduct, regardless of their religious character." *Id.* (quotations omitted and brackets added). The board specifically stated that it was seeking revocation because Morrill "was found guilty of assault on a minor age female and court ordered to undergo a sex offender evaluation," not because of his religious views. Since the board revoked his certificate, not for his religious beliefs, but for his conduct with the victim, we reject this argument. *See Petition of Smith*, 139 N.H. at 308, 652 A.2d at 161.

*V. Immunity*

Morrill contends that because he made a good faith report of potential parental abuse and neglect of the victim to DCYF, RSA 169-C:31 (Supp. 2000) immunizes him from the board's scrutiny and the revocation of his teaching certificate.

RSA 169-C:31 provides that anyone making a good faith report pursuant to the chapter is immune from any liability, civil or criminal, that might otherwise be incurred or imposed. *See Petition of Bagley*, 128 N.H. 275, 280, 513 A.2d 331, 335 (1986). The board, however, did not take any action based on Morrill's report of the parents' alleged failure to provide medical treatment for the victim. Rather, the board's action was based on Morrill's unrelated assault of the victim.

■ While Morrill contends that the victim's parents retaliated by reporting him to DCYF after he filed a report against them, their alleged motivation is irrelevant. The board imposed no liability upon Morrill because of his report to DCYF. Therefore any immunity which may have attached to Morrill as a result of his report to DCYF was not violated as a result of the board's action.

*Affirmed.*

THAYER, J., sat for oral argument but resigned prior to the final vote; BRODERICK, J., concurred; HORTON, J., retired, specially assigned under RSA 490:3, concurred.