478

State Board of Education
No. 2003-667

APPEAL OF HOPKINTON SCHOOL DISTRICT
(New Hampshire State Board of Education)

Argued: September 9, 2004
Opinion Issued: November 18, 2004

*Upton & Hatfield, LLP*, of Concord (*Russell F. Hilliard* and *Lauren S. Irwin* on the brief, and *Mr. Hilliard* orally), for the petitioner.

*Wiggin & Nourie, PA*, of Manchester (*Stephanie Bray* on the brief), and *Greenberg Traurig, LLP*, of Boston, Massachusetts (*Courtney B. Pillsbury* on the brief and orally), for the respondent.

DUGGAN, J. This case concerns the non-renewal of the contract of the respondent, Mary Beth Stevens, as principal of the Maple Street School in Hopkinton. The petitioner, Hopkinton School District (district), seeks review of the State Board of Education's (board) decision finding that there was "bias and/or the appearance of bias" in the Hopkinton School Board's (HSB) decision affirming the superintendent's recommendation for non-renewal of Stevens' contract. We vacate and remand.

The record supports the following facts. In 1996, Stevens began serving as the principal of the Maple Street School. During the 1998-1999 school year, problems arose involving Stevens' administration of the school. Although Stevens' evaluation that school year was basically favorable, Superintendent Richard Ayers noted the need for an action plan at the Maple Street School to address his concerns, which included Stevens' communication skills and the lack of a fully developed curriculum.

At the same time, Ayers received evaluations from the HSB that noted concern with the Maple Street School leadership. The HSB directed Ayers to identify the problems and propose solutions for the school, including an HSB-approved action plan.

During the 2000-2001 school year, Ayers prepared an action plan for Stevens. In February 2001, Stevens received an unfavorable evaluation

that again noted problems in the areas of communication and curriculum development, among others. On April 4, 2001, Ayers advised Stevens that soon she would be presented with an action plan designed to give her concrete goals that she must meet in order to rectify the problems at Maple Street School.

On April 13, 2001, Stevens attended a meeting with Ayers, Peggy McAllister, executive director of the New Hampshire Association of School Principals, and Edward Kaplan, chairman of the HSB. At the meeting, Ayers presented the action plan to Stevens. Ayers indicated to Stevens that full implementation of the action plan would be necessary for her to succeed as principal of Maple Street School.

Over the next school year, Ayers was concerned with Stevens' failure to meet the goals set forth in the action plan. On March 30, 2002, Ayers formally advised Stevens that her contract would not be renewed for the following year. One of the primary reasons he cited for not renewing her contract was her non-completion of the action plan.

Pursuant to RSA 189:14-a (Supp. 2004), Stevens requested a letter of reasons and a hearing from the HSB in the matter of her non-renewal. On May 16, 2002, after a public hearing, the HSB affirmed Ayers' recommendation for non-renewal.

Stevens appealed to the board, claiming that the HSB was biased against her and she therefore was deprived of a fair hearing. Specifically, Stevens claimed that the HSB's alleged involvement in formulating and administering the action plan, as well as certain alleged incidents suggesting that the HSB was pressuring Ayers to "get rid of [her]," demonstrated that the HSB was biased.

The board appointed a hearing officer to determine the standard of bias to be applied and make a recommendation on whether there was bias. At the conclusion of a full evidentiary hearing, the hearing officer's recommendation stated, in part:

> In this case, the evidence demonstrates that sufficient pre-hearing circumstances existed which raised the spectre of unfairness. Of considerable concern is the involvement of the HSB chair in a meeting between Superintendent Ayers and [Stevens]; even assuming minimal participation [of] Mr. Kaplan and the altruistic purpose to which he attributed his presence. . . .
>
> The totality of circumstances in this case created sufficient risk of unfairness and prejudgment which could not likely be cured, even acknowledging the HSB's attempts to appear impartial and to afford [Stevens] with a full and fair hearing.

The board sustained the findings and conclusions of the hearing officer, holding that there was "bias and/or appearance of bias" by the HSB in hearing Stevens' appeal, entitling her to a new hearing before an impartial tribunal. This appeal followed.

We will not overturn the board's decision absent an error of law unless we are satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable. *Appeal of Morrill*, 145 N.H. 692, 695 (2001); *see* RSA 541:13 (1997). The party seeking to set aside the board's order bears the burden of demonstrating that it is clearly unreasonable or unlawful. *Morrill*, 145 N.H. at 695. The board's findings of fact are considered to be *prima facie* lawful and reasonable. *Id.*

On appeal, the district argues that the board erred as a matter of law by applying the wrong standard for determining bias in a non-renewal hearing. Specifically, the district contends that a showing of actual bias is required. We agree.

We previously have addressed the bias standard applied to a school board conducting a non-renewal hearing under RSA 189:14-a. *Farrelly v. Timberlane Regional School Dist.*, 114 N.H. 560, 563-64 (1974). In *Farrelly*, we declined to apply the juror standard for bias because "no school board would be qualified to act as decision-maker under RSA 189:14-a if the [juror standards] were applied and the decision would thus be surrendered to a body less familiar with relevant considerations and not responsible under state and local law for making these decisions." *Id.* at 564 (quotation omitted). Although we did not squarely address the bias standard that should apply to local school boards in non-renewal hearings, we concluded that the alleged denial of due process that resulted from the school board's prior involvement was "unsupported by any showing of actual bias or prejudice." *Id.* at 565.

Other courts that have addressed this issue require a showing of actual bias. *See O'Connell v. School Dist. of Springfield*, 830 S.W.2d 410, 418 (Mo. 1992) (en banc) (recognizing that "[t]he law is well-settled that the school board for the district that initiates charges against the teacher may also conduct the hearing, absent actual bias or prejudice"). In *Spradlin v. Board of Trustees Pascagoula School District*, for example, the entire school board had participated in a pre-hearing investigation of a teacher. *Spradlin v. Bd. of Tr. Pascagoula Sch. D.*, 515 So. 2d 893, 896-97 (Miss. 1987). Nonetheless, the Mississippi Supreme Court affirmed the teacher's dismissal, noting that "absent a showing of either personal animosity, personal stake or financial stake in the decision," the board's involvement in the events preceding the termination was not enough to "overcome the

presumption of honesty and integrity of board members in conducting the hearing and rendering the decision." *Id.* at 898.

We have acknowledged, as have other courts, the practical reality of the role of local school boards. *See, e.g., Hortonville Dist. v. Hortonville Ed. Assn.*, 426 U.S. 482, 495-96 (1976); *Petrowski v. Norwich Free Academy*, 506 A.2d 139, 145 (Conn. 1986), *appeal dismissed*, 479 U.S. 802 (1986); *Farrelly*, 114 N.H. at 564-65. "Local governments and school boards would be seriously handicapped if any conceivable interest, no matter how remote and speculative, would require the disqualification of a public official." *Petrowski*, 506 A.2d at 145 (quotation omitted). Accordingly, we hold that a school board may conduct a non-renewal hearing, absent a showing of actual bias or prejudice. To hold otherwise would disregard the intent of the legislature in providing a statutory framework for non-renewal proceedings complete with hearings at both local and State levels, including the local school board. *See Farrelly*, 114 N.H. at 564.

Here, the hearing officer concluded that there was a "risk of unfairness and prejudgment" in the HSB's non-renewal hearing. The board agreed that there was "bias and/or [an] appearance of bias." In light of our adoption of the actual bias standard, we vacate the board's ruling and remand for application of the standard set forth today. *Cf. Verizon New England v. City of Rochester*, 151 N.H. 263, 271 (2004) (remanding for application of test by the trial court in the first instance).

To assist the board in applying the actual bias standard on remand, we provide the following guidance to the board. The board should apply the presumption that the HSB, serving in an adjudicatory capacity, is "presumed to be of conscience and capable of reaching a just and fair result." *Petition of Grimm*, 138 N.H. 42, 52 (1993). In addition, the board must find that there was more than prior involvement of Kaplan or the HSB to bar the HSB from conducting the hearing on actual bias grounds. *See Farrelly*, 114 N.H. at 565. *Compare Crane v. Mitchell County U.S.D. No. 273*, 652 P.2d 205, 214 (Kan. 1982) (superseded by statute on other grounds) ("[T]he mere fact a school board may make a prior decision to dismiss a teacher does not render it incapable of providing the teacher with a subsequent hearing fully complying with due process.") *with Riter v. Woonsocket School Dist. No. 55-4*, 504 N.W.2d 572, 575-76 (S.D. 1993) (finding actual bias where, among other considerations, a position from which the coach was being terminated had been offered to another person prior to the hearing).

The board may examine the entire written record in this case and accept, reject or modify the hearing officer's findings of fact and conclusions of law. *See Appeal of Dell*, 140 N.H. 484, 493 (1995). When an administrative agency rejects a hearing officer's advisory decision, it must adequately explain the grounds for its decision and fully set out the agency's decision based upon an independent examination of the record. *Id.* In general, the board may resolve evidentiary conflicts by using its own expertise and technical judgment in evaluating opinion evidence contained in the record. *Id.* at 496. This procedure is not proper, however, "where the board elects to make factual determinations as a hearing panel and disposition turns on the credibility of the witnesses' testimony." *Id.* at 495 (quotation and ellipsis omitted); *see also Grimm*, 138 N.H. at 42. When the resolution of disputed facts depends upon the fact finder's assessment of witnesses' credibility, as shown by their demeanor or conduct at a hearing, all members of the hearing panel acting as fact finders must be present for the testimony. *Dell*, 140 N.H. at 496.

The board's discussion focused primarily on McAllister's testimony before the hearing officer. This testimony included a description of a telephone conversation between McAllister and Ayers in the spring of 2001 wherein Ayers allegedly stated that the HSB said that the renewal of his own contract depended upon him "get[ting] rid of" Stevens. Ayers, however, did not recall that specific exchange and Kaplan testified that he had not made such a representation to Ayers. The hearing officer discussed the inconsistent testimony but declined to make any factual findings regarding the statements or their credibility, nor did her recommendation to the board rely upon the testimony. In applying the standard set forth above, the board may consider these statements as part of the written record but may not make factual determinations that depend upon the credibility of the witnesses' statements. *See Dell*, 140 N.H. at 495-96.

We vacate and remand for further proceedings consistent with this opinion.

*Vacated and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and GALWAY, JJ., concurred.