Christopher LEHTO, Appellant Below–Appellant,

v.

BOARD OF EDUCATION OF the CAESAR RODNEY SCHOOL DISTRICT, Appellee Below–Appellee.

No. 175, 2008.

Supreme Court of Delaware.

Submitted: Sept. 3, 2008.
Decided: Dec. 2, 2008.

---

James E. Liguori, Esquire, (argued) of Liguori, Morris & Yiengst, Dover, DE, for appellant.

Noel E. Primos, Esquire, (argued) of Schmittinger & Rodriguez, P.A., Dover, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Appellant, Christopher Lehto, appeals from the decision of Appellee, Board of Education of the Caesar Rodney School District (the "Board"), terminating his employment as a teacher on grounds of immorality. Lehto appealed his dismissal to the Superior Court, which affirmed the decision of the Board. Lehto now appeals to this Court, arguing that there is insufficient evidence to support his dismissal. We find no merit in Lehto's appeal and affirm.

## I.

Lehto was an art teacher at the Star Hill Elementary School ("Star Hill)" in the Caesar Rodney School District in Camden, Delaware (the "District"), for eight years. In early 2007, Lehto became involved in a sexual relationship with a seventeen-year-old female (the "Student") who attended Polytech Senior High School in Woodside, Delaware.[1] At the time, Lehto was thirty-four years old.

Lehto was previously the Student's teacher when she attended Star Hill. He became reacquainted with his former student in December 2006 when she began to come to the elementary school to pick up her younger sibling, who attended Star Hill at the time. The two soon began to speak on the phone and Lehto provided assistance to the Student with at least one school project.

The relationship became sexual in nature a few months later and Lehto and the Student engaged in several instances of sexual contact.[2] On one occasion, Lehto called in sick and stayed home from work. During school hours, Lehto communicated with the Student and she came to his home during her lunch hour. They watched a movie and began to kiss, eventually moving to the floor where the Student's shirt was removed. The couple then moved to Lehto's bedroom where he fondled and licked the Student's breasts. They also engaged in "grinding," or simulated sexual intercourse, but the episode ended without Lehto and the student engaging in actual sexual intercourse.

Several other occasions of sexual contact occurred in a Wal–Mart parking lot after Lehto and the Student met for lunch. During these trysts, Lehto and the Student kissed and Lehto licked and fondled the Student's breasts. On at least one occasion, Lehto sexually penetrated the Student by putting his hand down her pants and inserting his finger into her vagina.[3]

Eventually, the Student told a friend about her relationship with Lehto and that friend told her parent, who informed the Delaware State Police. Lehto was charged with fourth degree rape based on the Student's age and his position as a person "in a position of trust, authority or supervision" over her.[4] However, a *nolle prosequi* was entered on the charge on June 14, 2007 for lack of prosecutive mer-

---

1. Polytech Senior High School is not one of the schools within the Caesar Rodney School District.

2. Sexual contact is defined in 11 *Del. C.* § 761(e)(1) as "[a]ny intentional touching by the defendant of the anus, breast, buttocks or genitalia of another person."

3. Sexual penetration is defined in 11 *Del. C.* § 761(h)(1) as "[t]he unlawful placement of an object ... inside the anus or vagina of another person." An "object" under 11 *Del. C.* § 761(c) includes a finger. *See Hoyle v. State*, 2008 WL 361139, at *2 (Del.2008) ("An 'object' includes 'any part of the body.' ") (quoting 11 Del. C. § 761(c)).

4. 11 *Del. C.* § 770(a)(4).

it.[5]

On July 2, 2007, the Board notified Lehto of its intention to terminate his services as a teacher because of immorality and/or misconduct in office. At a hearing held on August 15, 2007, the District presented evidence through Detective Kevin McKay of the Delaware State Police, who had conducted the investigation of Lehto.[6] Detective McKay had interviewed Lehto and the Student, both of whom detailed the numerous instances of sexual contact described above. In an effort to show that the relationship had not affected his job performance, Lehto presented evidence of his teaching evaluations, all of which had been positive. Lehto also presented proof that the State dismissed the rape charge initially filed against him.

On August 27, 2007, the Board issued its written decision terminating Lehto. The Board found that there was no factual dispute that the relationship between Lehto and the Student was of a sexual nature. It concluded that Lehto's conduct in initiating and engaging in a sexual relationship with a minor constituted immorality, violated the common mores of society, and provided just cause for his termination. The Board noted: "Such conduct certainly interferes with Mr. Lehto's important function of serving as a role model to the students in his school, and threatens the moral and social orientation of such stu-

dents." The Board based its finding of immorality on the fact that the relationship "sends the wrong message to students of the District regarding appropriate relationships between teachers and students" and that "the referenced relationship evinces a serious lack of judgment that is far below the standard of such judgment acceptable for teachers employed by the Caesar Rodney School District."[7]

Lehto appealed to the Superior Court, arguing that there was no substantial evidence in the record or any legal basis to support the Board's ruling. Particularly, Lehto focused on the fact that the Student did not attend a school within the District, that he did not engage in criminal activity, and that the affair had no impact on his professional duties. The Superior Court acknowledged that "[t]he definition of immorality does not lend itself to methodical application," and found that the Board's determination that Lehto could no longer serve as an effective role model to the students in his school because of his conduct was supported by substantial evidence. The Superior Court affirmed the Board's decision and this appeal followed.[8]

## II.

When reviewing an appeal from a decision of a board of education, we apply the substantial evidence review standard.[9] "Substantial evidence has been de-

---

**5.** Lehto represents that the charge was dismissed because the Department of Justice determined Lehto was not in a position of trust or authority over the Student and that she was of legal age to consent to a sexual relationship with him.

**6.** *See* 14 *Del. C.* § 1413(a) (providing for a hearing upon written request by terminated teacher).

**7.** In its July 2, 2007 letter to Lehto, the Board notified Lehto that his termination was "due to immorality and/or misconduct in office."

However, in its August 27, 2007 written decision, the Board focused solely on immorality, and made no conclusions regarding misconduct.

**8.** *Lehto v. Bd. of Educ.*, 2008 WL 821525 (Del.Super.Ct. Mar.4, 2008) (Order).

**9.** *Bd. of Educ. v. Shockley*, 155 A.2d 323, 327 (Del.1959); *see also Squire v. Bd. of Educ.*, 911 A.2d 804, 2006 WL 3190337, at *2 (Del. 2006) (Table); *Pierson v. De La Warr Sch. Dist. Bd. of Educ.*, 300 A.2d 3, 3 (Del.1972).

fined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[10] "If there was presented substantial and credible evidence to support the charges and a fair administrative hearing was had, the Superior Court cannot substitute its judgment for the judgment of the school authorities."[11]

### Immorality requires a nexus with fitness to teach

■ The Board terminated Lehto because of "immorality" pursuant to 14 *Del. C.* § 1411, which provides:

Termination at the end of the school year shall be for 1 or more of the following reasons: Immorality, misconduct in office, incompetency, disloyalty, neglect of duty, willful [sic] and persistent insubordination, a reduction in the number of teachers required as a result of decreased enrollment or a decrease in education services. The board shall have power to suspend any teacher pending a hearing if the situation warrants such action.[12]

Immorality is not defined in this statute, or anywhere else in 14 *Del. C.* ch. 14; however, in *Skripchuk v. Austin,*[13] the Su-

perior Court addressed the meaning of "immorality" as follows:

Although there might be disagreement about the meaning of 'immorality' in some cases, by the very nature of the term, which refers to the *common mores* of society, one would expect broad agreement in most cases. Moreover, *the term will be construed in the context in which it appears in this chapter to refer to such immorality as may reasonably be found to impair the teacher's effectiveness by reason of his unfitness or otherwise.*

We adopt this definition for purposes of Section 1411.

■ Consistent with *Skripchuk,* a majority of courts have required that "a nexus exist between the off-duty conduct and a teacher's duties before allowing termination of the teacher based on immorality."[14] An early decision in this area was *Morrison v. State Board of Education,*[15] in which California's State Board of Education, acting pursuant to a state statute, revoked a teacher's "life diplomas" because he had engaged in "immoral conduct." The California Supreme Court ruled that the statute upon which the revocation was based was not unconstitutionally vague, but only to the extent that its

**10.** *Squire,* 2006 WL 3190337, at *2 (quoting *Shockley,* 155 A.2d at 327). We further explained that "as a matter of public policy, findings of [a hearing officer] after a public hearing should not be set aside unless the record clearly contains no substantial evidence supporting [a hearing officer's] findings.'" *Id.* (quoting *Leach v. Bd. of Educ.,* 295 A.2d 582, 583 (Del.Super.1972)).

**11.** *Shockley,* 155 A.2d at 327–28. We explained that in order to promote the efficient functioning of the school system, the substantial evidence standard was necessary to maintain the authority vested in boards of education to enforce discipline in teaching staffs. Consequently, after a finding by a board adverse to a teacher and resulting in the teach-

er's termination, upon appeal the teacher bears the burden of demonstrating that the board's action was not based upon substantial evidence, but was in fact arbitrary or capricious. *Id.* at 328.

**12.** 14 *Del. C.* § 1411.

**13.** 379 A.2d 1142, 1143 (Del.Super.Ct.1977).

**14.** Jason R. Fulmer, *Dismissing the "Immoral" Teacher for Conduct Outside the Workplace—Do Current Laws Protect the Interests of Both School Authorities and Teachers,* 31 J.L. & EDUC. 271, 284 (2002).

**15.** 1 Cal.3d 214, 82 Cal.Rptr. 175, 461 P.2d 375, 378–79 (1969).

terms—including "immoral conduct"— were construed to implicate only conduct that impacts the fitness to teach.[16] Since *Morrison*, numerous courts have similarly interpreted analogous statutes to require a nexus.[17] That nexus typically focuses "on how the conduct may affect the teacher's ability to teach," which includes "the teacher's ability to maintain discipline in the classroom, the effect the act will have on the teacher's students, and the attitudes of the teacher's [students'] parents."[18] Additionally, "off-campus acts for which a teacher is being disciplined need not be limited to teacher-student interactions, but must relate to his/her fitness as a teacher and must have an adverse effect on or within the school community."[19] We conclude that in cases involving termination for "immorality," this nexus test strikes a proper balance under Section 1411 for school boards to apply.

## The nexus was sufficient to support Lehto's termination

■ The record demonstrates a sufficient nexus between the undisputed sexual relationship between Lehto and the Student and Lehto's fitness to teach. Lehto argues to the contrary and cites performance reviews that predate the public disclosure of his relationship. However, this argument discounts the sexual nature of his relationship with the Student that began in the school environment, that involved a minor sibling of another minor student who attended his school, and the public controversy which followed Lehto's arrest and the disclosure of the relationship.

Many decisions have upheld the termination of a teacher because of immorality based on a teacher's affair with a student.[20]

16. *Id.* at 386–90

17. *See Alford v. Ingram*, 931 F.Supp. 768, 772–73 (M.D.Ala.1996) (interpreting "immoral conduct" to imply an unfitness to teach); *Thompson v. Sw. Sch. Dist.*, 483 F.Supp. 1170, 1181 (W.D.Mo.1980) (holding immorality requires showing on of harm to pupils, faculty, or the school itself); *Winters v. Ariz. Bd. of Educ.*, 207 Ariz. 173, 83 P.3d 1114, 1119 (Ct.App.2004) (requiring off-campus "immoral or unprofessional conduct" relate to fitness to teach or adversely effect school community); *Weissman v. Bd. of Educ.*, 190 Colo. 414, 547 P.2d 1267, 1272–73 (1976) (requiring "immoral actions" indicate unfitness to teach); *Hainline v. Bond*, 250 Kan. 217, 824 P.2d 959, 967 (1992) (holding immoral means unfit to teach); *Clark v. Ann Arbor Sch. Dist.*, 130 Mich.App. 681, 344 N.W.2d 48 (1983) (requiring nexus to fitness to teach in order to discipline teacher for sexual misconduct with student); *Ross v. Robb*, 662 S.W.2d 257, 259 (Mo.1983) (holding "immoral conduct" requires "conduct rendering plaintiff unfit to teach"); *Clarke v. Bd. of Educ.*, 215 Neb. 250, 338 N.W.2d 272, 275 (1983) (holding immorality must directly relate to fitness to teach); *In re Appeal of Morrill*, 145 N.H. 692, 765 A.2d 699, 702

(2001) (requiring a nexus between outside conduct and fitness and ability to teach); *Barringer v. Caldwell County Bd. of Educ.*, 123 N.C.App. 373, 473 S.E.2d 435, 439 (1996) (holding immorality means conduct that reflects on ability to teach); *Powell v. Paine*, 221 W.Va. 458, 655 S.E.2d 204, 209 (2007) (requiring rationale nexus between off-the-job misconduct and fitness to teach or school community). *But see Toney v. Fairbanks North Star Borough Sch. Dist.*, 881 P.2d 1112, 1114 (Alaska 1994) (applying instead, the state's statutory framework of crimes of moral turpitude).

18. Fulmer, *supra* note 14, at 285.

19. *Winters*, 83 P.3d at 1119.

20. *E.g. Toney*, 881 P.2d at 1114 (finding teacher's pre-hiring sexual relationship with a student while working in another school constituted immoral conduct justifying dismissal); *Mulstay v. Bd. of Educ.*, 2003 WL 23219646, at *7 (Del.Super.Dec. 8, 2003) (finding teacher's actions in writing love letters to a one of his middle school students, hugging her, and attempting to initiate "sex talk" constituted immoral conduct justifying dismissal); *Bd. of*

Although this case involves a sexual relationship with a minor who is a former, but not current, student, this distinction does not make a difference. Other jurisdictions have also considered the nexus between a teacher's fitness to teach and his sexual conduct outside of the school with a non-student who is a minor. Despite the lack of a direct connection with the classroom, these jurisdictions have found a nexus based on the effect of the conduct on the teacher's position as a role model and the parents' ability to trust the safety of their children to the school.

In *Tomerlin v. Dade County School Board*,[21] the Florida District Court of Appeals upheld the dismissal of an elementary school teacher on grounds of immoral conduct for performing oral sex on his stepdaughter. Although the incident occurred after school hours and in the teacher's own home, the court explained that "[m]others and fathers would question the safety of their children; children would discuss [his] conduct and morals. All of these related to [his] job performance."[22] The court continued: "A school teacher holds a position of great trust. We entrust the custody of our children to the teacher. We look to the teacher to educate and to

prepare our children for their adult lives. To fulfill this trust, the teacher must be of good moral character; to require less would jeopardize the future lives of our children."[23]

Similarly, in *In re Appeal of Morrill*,[24] a high school teacher was terminated for lack of good moral character after pleading *nolo contendere* to charges of simple assault against a minor female who was not one of his students. The Supreme Court of New Hampshire found that even though the victim was a non-student, there was a sufficient nexus to the teacher's fitness to teach because the "conduct demonstrates serious disregard for students under his supervision and care. Parents and school administrators would reasonably be concerned about the well-being and education of children in such an environment."[25]

■ Here, part of Lehto's job as a teacher was to serve as a role model for his students. Because a teacher's interpersonal relationships are observed by and reflected in the conduct of students, teacher-student relationships must be kept within the bounds of acceptable conduct. If proven, Lehto's sexual contact with a minor directly related to his fitness to teach other minors and impacted the

---

*Educ. v. Ill. State Bd. of Educ.*, 217 Ill.App.3d 720, 160 Ill.Dec. 575, 577 N.E.2d 900 (1991) (finding that teacher's actions in kissing and hugging to female students, sending them gifts, and writing them love letters constituted immoral conduct justifying dismissal); *Clark*, 130 Mich.App. 681, 344 N.W.2d 48 (finding teacher's relationship with seventeen-year-old student unprofessional and supported termination where the two had kissed, taken an overnight trip together, and the teacher had spent the night at the student's apartment); *Queen v. Minneapolis Public Schs. Special Sch. Dist. No. 1*, 1990 WL 146608 (Minn.Ct. App. Oct. 9, 1990) (upholding teacher's dismissal for immoral conduct based on teacher's sexual relationship with student); *Andrews v. Ind. Sch. Dist. No. 57*, 12 P.3d 491 (Okla.Civ.App.2000) (finding that a relation-

ship between a thirty-nine-year-old teacher and her seventeen-year-old student constituted immoral conduct justifying dismissal).

21. 318 So.2d 159, 159–60 (Fla.Dist.Ct.App. 1975).

22. *Id.* at 160.

23. *Id.*

24. 765 A.2d at 701. Morrill was tutoring the student at his home and, among other inappropriate behavior, insisted that she give him "holy kisses" on the mouth and "holy hugs" whenever she entered and exited the house and during study breaks. *Id.* at 703.

25. *Id.* at 703.

school community. There was a proper nexus between his alleged off-duty conduct and his fitness to teach.

### *The evidence was sufficient to support the Board's decision.*

Our review for substantial evidence looks only for "such relevant evidence as a reasonable mind might accept as adequate" to support the Board's conclusion. Detective McKay's testimony, based on corroborating interviews with both Lehto and the Student, detailed Lehto's sexual relationship with a seventeen-year-old former student—a relationship initiated in the school environment where the Student's younger sibling was enrolled. The community learned of this relationship. The Board could reasonably conclude that the relationship itself threatened Lehto's "important function of serving as a role model to the students in his school...." Moreover, the public disclosure of that relationship permitted the Board to infer a significant detrimental impact on the school community if Lehto continued to teach, as Lehto's actions and his continuation in his position could reasonably undermine parents' confidence in both Lehto and the District.

The record also provided substantial evidence from which the Board could conclude that Lehto's actions in pursuing and engaging in this relationship "threaten[ed] the moral and social fabric of the school environment, ... sen[t] the wrong message to students of the District regarding appropriate relationships between teachers and students" and "evince[ed] a serious lack of judgment that is far below the standard of such judgment acceptable for teachers employed by the Caesar Rodney School District." We conclude that there was substantial evidence to support the Board's decision that Lehto's relationship with the Student constituted immorality justifying dismissal under 14 *Del. C.* § 1411.

### III.

The judgment of the Superior Court is **AFFIRMED.**