# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHRISTINE MULRY FRANCIS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N16A-10-006 FWW |
| | ) | |
| DELAWARE BOARD OF NURSING, | ) | |
| | ) | |
| Appellee. | ) | |

| | | |
|---|---|---|
| ANGELA L. CALDWELL DEBENEDICTIS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELAWARE BOARD OF NURSING, | ) | |
| | ) | |
| Appellee. | ) | |

Submitted: October 19, 2017
Decided: January 23, 2018

Upon Appeal from the Delaware Board of Nursing:
**REVERSED.**

## <u>OPINION AND ORDER</u>

Daniel A. Griffith, Esquire, 405 N. King St., Suite 500, Wilmington, Delaware 19801; Attorney for Appellant.

Carla A.K. Jarosz, Esquire, Deputy Attorney General, 820 N. French Street, Wilmington, Delaware 19801; Attorney for Appellee.

**WHARTON, J.**

## I. INTRODUCTION

Christine Francis and Angela DeBenedictis ("Appellants" or "nurses") filed their Notice of Appeal on October 21, 2016, requesting judicial review of the October 7, 2016 order by the Delaware Board of Nursing ("Board"). Ms. Francis and Ms. DeBenedictis contend that the Board's disciplinary Order was in error.

In considering this appeal, the Court must determine whether the Board's decision to discipline Ms. Francis and Ms. DeBenedictis is supported by substantial evidence and free of legal error. Upon consideration of the pleadings before the Court and the record below, the Court finds that there is insubstantial evidence to support the Board's ruling, and therefore, the Board erred in reaching its decision. Accordingly, the Board's decision is **REVERSED**.

## II. FACTUAL AND PROCEDURAL CONTEXT

Ms. Francis and Ms. Debenedictis are Registered Nurse licensees of the Delaware Board of Nursing (the "Board").[1] On March 17, 2015 Ms. Francis and Ms. Debenedictis returned Sovaldi pills to a pill container to be administered after they had been spilled and discarded into a sharps container.[2] Because they returned the discarded pills, a Hearing Officer found Ms. Francis and Ms. Debenedictis in violation of various Delaware Board of Nursing Board Regulations ("the Board

---

[1] *See* Recommendation of Chief Hearing Officer at 1.
[2] *Id.*

2

Regulations").[3]   Ms. Francis and Ms. DeBenedictis filed combined written exceptions to the Hearing Officer's Recommendation, but the Board affirmed the Recommendation in full.[4]   Ms. Francis and Ms. DeBenedictis now appeal that finding.

The State of Delaware has a constitutional obligation to provide adequate healthcare for its inmate population.[5] The State may discharge this obligation either by employing its own medical providers at the correctional facilities or by contracting with private companies whose employees work at the correctional facilities.  In March 2015, the Department of Corrections ("DOC") had a contract with Connections Community Support Programs, Inc. ("Connections") for the provision of general, non-specialized treatment of DOC patients.[6] DOC also had a separate contract with CorrectRX Pharmacy Services, Inc. ("CorrectRX") to run the pharmaceutical services at the Delaware correctional facilities.[7]

Dr. Jamie McGee was the clinical pharmacist assigned by CorrectRX to work on-site at the James T. Vaughn Correctional Center ("JTVCC").[8] Dr. McGee's direct supervisor at CorrectRX was Dr. Valerie Barnes.[9] Connections employed the

---

[3] Id. at 30-34.
[4] *See* Final Board Order at 1-3.
[5] Appellants' Opening Br., D.I. 16, at 7.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*

other pertinent actors: administering nurses Megan Bowerson and Roxanna Gonzalez; Nursing Supervisor and Health Services Administrator at JTVCC Christine Francis; Director of Nursing Angela DeBenedictis; and statewide medical director for Connections Dr. Laurie Ann Spraga.[10]

Patient DL is an inmate at JTVCC.[11] He has Hepacitis C and is prescribed Sovaldi as treatment.[12] Each Sovaldi tablet costs approximately $1,000.00 and a full bottle contains 28 tabs.[13] Due to its high costs, Connections strictly monitored the drug by counting it at every shift change and maintaining a log of its usage.[14]

On March 17, 2015 Nurse Gonzalez completed her shift at JTVCC and was to be replaced by Nurse Bowerson. As required, the nurses counted the Sovaldi tablets and, in the course thereof, Nurse Bowerson spilled twelve tablets onto the floor.[15] Ms. Bowerson "wasted" the pills into the "sharps" container—a box intended for "biohazard" materials—and noted on a Controlled Substance Usage Log that the pills had been discarded.[16] Because this caused the pill count to be 12 fewer than previous and the prescribed course of treatment required the patient to ingest the 12 pills over 12 days, the pills needed to be replaced quickly.

---

[10] *Id.* at 8, 11, 15.
[11] State's Ex. 1 at 94.
[12] *Id.*
[13] *See* Recommendation of Chief Hearing Officer at 8.
[14] *See* Hr'g. Tr. 1 at 14. *See also* State's Ex. 1 at 67-68.
[15] Recommendation of Chief Hearing Officer at 3,5.
[16] *Id.* at 5.

4

Nurse Bowerson contacted the on-site CorrectRX Pharmacist, Dr. McGee, to request a refill of the Sovaldi pills.[17] Dr. McGee, in turn, contacted her boss, Dr. Barnes, who contacted Dr. Spraga.[18] Dr. Barnes informed Dr. Spraga that 12 Sovaldi pills had been wasted and "asked Dr. Spraga to arrange for the retrieval of the pills."[19] Dr. Spraga then contacted Ms. Francis and told her to retrieve the Sovaldi pills from the sharps container.[20] Upon Dr. Spraga's directive, Ms. Francis and Ms. DeBenedictis proceeded to the pharmacy, located the sharps container, turned it over, and shook it until the 12 pills finally fell out.[21] Included in the waste that fell from the container were retractable insulin syringes, retractable lancets, and diabetic test strips.[22] There was additional material in the sharps container, but no one knows what exactly it was.[23]

The retrieved Sovaldi pills were taken to Nurse Francis' office and inspected by Nurses Francis and DeBenedictis.[24] Dr. McGee, upon the request from Dr. Barnes, came to Nurse Francis' office to inspect the Sovaldi pills herself.[25] Dr. McGee has previously conducted inspections of pills approximately 20-25 times in

---

[17] *Id.* at 8.
[18] *Id.*
[19] *Id.* at 13, 16.
[20] *Id.* at 20, 24.
[21] *Id.*
[22] *Id.*
[23] *Id.* at 21.
[24] *Id.* at 24.
[25] *Id.*

the past to determine if they had been tampered with, altered, split or had previously been "cheeked" in a human mouth.[26]

Knowing that the pills had been wasted, Dr. McGee performed a visual inspection and determined that the tablets did not show any "visible signs of contamination in the form of blood, dirt, water, or other damage."[27] Furthermore, the pills looked new, "as if they had just come out of the bottle."[28] Dr. McGee and Dr. Barnes then decided that the pills would be returned to the bottle for administration.[29] Dr. Spraga acquiesced to the two pharmacists decision as they were the "subject matter experts."[30]

Dr. McGee and Ms. Francis—with full knowledge of the pills adventure—personally returned the tablets to their original bottle and updated inmate DL's Sovaldi usage log.[31] Inmate DL ultimately ingested the "wasted" Sovaldi pills and was told of the incident several days afterward.[32] He has suffered no ill effects.

On March, 26, 2015 Nurse Bowerson lodged a complaint with the Department of State's Division of Professional Regulation ("DPR") against nurses Francis and DeBenedictis. The State filed claims against the pharmacists, Dr. Spraga, and nurses

---

[26] Hr'g. Tr. 1 at 88.
[27] State's Ex. 1 at 138.
[28] Recommendation of Chief Hearing Officer at 24.
[29] *Id.* at 29.
[30] Hr'g. Tr. 1 at 264.
[31] Hr'g. Tr. 2 at 117-119. *See also* State's Ex. 1 at 67.
[32] Hr'g. Tr. 1 at 57-58: 131-132.

Francis and DeBenedictis. Dr. McGee and Dr. Barnes had given statements during the investigation denying any involvement in the decision to return the pills to the bottle, and consequently the State discontinued the pursuit of claims against them. The State only proceeded against Dr. Spraga, Ms. Francis, and Ms. DeBenedictis.

*Proceedings Before the Hearing Officer*

On June 15 and 16, 2016 a Hearing Officer conducted a hearing on the State's Complaint.[33] The claims against Dr. Spraga, Ms. Francis, and Ms. DeBenedictis were consolidated for purposes of the hearing. The State proceeded on the theory, consistent with the prehearing interviews conducted by the DPR investigators, that the pharmacists were unaware the pills had been wasted in a sharps container, that Dr. Spraga unilaterally decided to return the pills, and that the nurses acted unethically by retrieving the wasted pills and returning them to the container for administration.

In addition to their own testimony, Ms. Francis and Ms. DeBenedictis offered the testimony of two expert witnesses: Kathryn Wild and Dr. Paul Axelson. In particular, Ms. Wild is an expert in nursing practice and correctional healthcare.[34] Dr. Axelson is an expert in the fields of internal medicine, infectious disease, and pharmacology.[35] Dr. Axelson testified that in his opinion, administration of the

---

[33] Hr'g. Tr. 1 at 1. *See also* Hr'g. Tr. 2 at 1.
[34] Hr'g. Tr. 2 at 75-81.
[35] *Id.* at 5-8.

wasted Sovaldi pills to the patient was acceptable despite the pills "adventure" in the sharps container.[36] Both experts testified that the harm to the patient was nil or incalculably small and they personally would have ingested the wasted tablets.[37]

During the Hearing Officer's findings of fact, the most contested issues were (1) the knowledge of the pharmacists and (2) their role in decision-making; whether the pharmacists were aware of the pills "adventure" prior to deciding to return the pills or whether the pharmacists were complicit in the decision to reuse the pills. The Hearing Examiner found as a fact that both pharmacists, Dr. McGee and Dr. Barnes, were aware that the pills had been removed from the sharps container and decided to return the pills.[38] Furthermore, the Hearing Examiner found that Ms. Francis and Ms. DeBenedictis trusted Dr. McGee's judgment and followed that decision because it was a directive.[39]

*The Hearing Officer's Conclusions of Law*

The Hearing Officer concluded that nurses Francis and DeBenedictis engaged in unprofessional conduct by violating Bd. Reg. 10.4.1, Bd. Reg. 10.4.2.14, and Bd. Reg. 10.4.2.28.[40] Such unprofessional conduct is a basis for professional discipline

---

[36] *Id.* at 16-17.

[37] *Id.* at 20-22, 37, 95, 99-100.

[38] Francis Recommendation of Chief Hearing Officer at 29. *See also* DeBenedictis Recommendation of Chief Hearing Officer at 29.

[39] *Id.*

[40] Francis Recommendation of Chief Hearing Officer at 31-33. *See also* DeBenedictis Recommendation of Chief Hearing Officer at 32-34.

according to 24 Del C. § 1922(a)(8). In particular, the Hearing Officer found that Ms. Francis and Ms. DeBenedictis violated Bd. Reg 10.4.1[41] because they were obligated to exercise independent judgment and object or refuse to participate in returning the pills. Furthermore, the nurses were aware of "standard operating procedure" at JTVCC, that the pills were to be wasted. Therefore, the return of the pills to the inmate constituted unprofessional conduct which may have adversely affected his health and welfare.

The Hearing Officer also found that Ms. Francis and Ms. DeBenedictis violated Bd. Reg. 10.4.2.14 because the nurses acted unethically.[42] The Hearing Officer defined ethical conduct as "conforming to accepted professional standards."[43] Therefore, because the return of the pills to the container did not conform to professional standards of nursing, Ms. Francis and Ms. DeBenedictis failed to act "ethically"—in violation of Bd. Reg. 10.4.2.14.[44]

Additionally, the Hearing Officer concluded that Ms. Francis and Ms. DeBenedictis violated Bd. Reg. 10.4.2.28.[45] The Hearing Officer first noted that

---

[41] Bd. Reg. 10.4.1: "Nurses whose behavior fails to conform to legal and accepted standards of the nursing profession and who thus may adversely affect the health and welfare of the public may be found guilty of unprofessional conduct."

[42] Bd. Reg. 10.4.2.14: "Failing to take appropriate action to safeguard a patient from incompetent, unethical or illegal health care practice."

[43] Francis Recommendation of Chief Hearing Officer at 32.

[44] *Id.*

[45] Bd. Reg. 10.4.2.28: "Failing to take appropriate action or to follow policies and procedures in the practice situation designed to safeguard the patient."

9

there was no specific policy or procedure in place at JTVCC which governed the handling of non-controlled substances which had been spilled.[46] Rather, the Hearing Officer concluded that Ms. Francis and Ms. DeBenedictis failed to take appropriate action to safeguard the inmate; the nurses failed to exercise reasonable independent nursing judgment and preclude the spilled Sovaldi pills from being administered to inmate after they had been wasted.[47]

As a result of the violations, the Hearing Officer recommended that: (1) the Board of Nursing place Ms. Francis' and Ms. DeBenedictis' nursing licenses on probation for a period of 90 days; (2) the nurses complete nine nursing education hours, three each in the subject area of (a) standard of care pharmacology and drug administration practices in institutional settings, (b) coordination of authority and responsibilities of multiple health care providers in institutional settings, and (c) nursing ethics; and (3) the final order of the Board constitute public disciplinary action reportable to public practitioner data bases.

The parties were given twenty days from the date of the Hearing Officer's proposed order to submit written exceptions, comments, and arguments concerning the conclusions of law and recommended penalty.[48] Ms. Francis and Ms. DeBenedictis provided written exceptions to the Board. The nurses' counsel then

---

[46] Francis Recommendation of Chief Hearing Officer at 33.
[47] *Id.*
[48] Final Board Order at 2.

presented verbal exceptions to the Board during the Board's meeting on September 14, 2016. Counsel highlighted the expert testimony, stressed the fact that the risk to the patient was negligible, argued that the Hearing Officer's finding that the actions resulted in a likelihood of harm was not supported by the evidence, and emphasized that the nurses were acting at the direction of the medical director and pharmacist.[49] The State responded by highlighting the facts in evidence.[50] After deliberating, the Board voted to affirm the Hearing Officer's recommended conclusions of law and discipline.[51]

### III. THE PARTIES CONTENTIONS

Ms. Francis and Ms. DeBenedictis contend that the Board's conclusion lacks "substantial evidence" and therefore must be vacated.[52] In particular, they argue that the Board's decision lacked substantial evidence because (1) the decision discredited the only expert testimony offered;[53] (2) the Pharmacists and the Medical director directed the return of the pills and the nurses had the right to rely upon that directive;[54] (3) there was no evidence that the nurses should have disobeyed the

---

[49] *Id.*
[50] *Id.*
[51] *Id.* at 2-3.
[52] Appellant's Opening Br., D.I. 16, at 38.
[53] *Id.* at 38-41.
[54] *Id.* at 41-43.

directive;[55] (4) the directive presented no risk of harm to the patient;[56] and (5) imposing discipline upon the nurses would put them in an impossible position.[57]

In response, the State argues that the Board's conclusion is based on their expertise and analysis of the facts in the record.[58] The State further argues that the record contained substantial facts regarding Ms. Francis' and Ms. DeBenedictis' unprofessional conduct and the standards in the nursing community.[59]

## IV. STANDARD OF REVIEW

Ms. Francis and Ms. DeBenedictis appeal an administrative disciplinary decision of the Delaware Board of Nursing. The Delaware Administrative Procedures Act ("APA") vests this Court with jurisdiction to entertain appeals from an administrative board's final order.[60] The board's final order must be affirmed so long as it is supported by substantial evidence and free from legal error.[61] Substantial evidence is that which a reasonable mind might accept as adequate to support a

---

[55] *Id.* at 43-45.

[56] *Id.* at 45-48.

[57] *Id.* at 49.

[58] Appellee's Answering Br., D.I. 17, at 14-22.

[59] *Id.* at 22-29.

[60] *See* 29 *Del. C.* §§ 10142 and 10102(4).

[61] *Conagra/Pilgrim's Pride, Inc. v. Green,* 2008 WL 2429113, at *2 (Del. June 17, 2008); *Jordan v. Bd. of Pension Trs. of Del.,* 2004 WL 2240598, *2 (Del. Super. Sept. 21, 2004); *King v. Bd. of Pension Trs. of Del.,* 1997 WL 718682, at *3–*4 (Del. Super. Aug. 29, 1997).

12

conclusion.[62] While a preponderance of evidence is not necessary, substantial evidence means "more than a mere scintilla."[63] The Court takes due account of the Board's specialized competence and the purpose of the law under which the Board acted,[64] and does not weigh the evidence, determine credibility or draw its own factual findings or conclusions.[65]

Questions of law are reviewed *de novo*.[66] If the Board's findings and conclusions are sufficiently "supported by the record and are the product of an orderly and logical deductive process," its decision will be affirmed.[67]

## V. DISCUSSION

### A. The *Spraga* Decision

The Hearing Officer found Dr. Spraga in violation of 24 Del C. § 1731(b)(3) because her failure to overrule the pharmacists caused a "risk of harm."[68] The Board of Medical Practice affirmed the Hearing Officer's recommendation and Dr.

---

[62] *Lehto v. Bd. Of Educ. of Caesar Rodney Sch. Dist.*, 962 A.2d 222, 225-226 (Del. 2008).
[63] *Breeding v. Contractors-One-Inc.*, 549 A.2d 1102, 1104 (Del. 1988); *see also Olney v. Cooch*, 425 A.2d 610, 614 (Del. 1981).
[64] 29 *Del. C.* §10142(d).
[65] *Janaman v. New Castle Cnty. Bd. Of Adjustment*, 364 A.2d 1241, 1242 (Del. Super. Ct. Aug. 19, 1976).
[66] *Anchor Motor Freight v. Ciabattoni*, 716 A.2d 154, 156 (Del. 1998); *see also Ward v. Dep't of Elections*, 2009 WL 2244413, at *1 (Del. Super. July 27, 2009).
[67] *Mentor Graphics Corp. v. Shapiro*, 818 A.2d 959, 963 (Del. 2003).
[68] 24 Del. C. § 1731(b)(3) states— "Unprofessional conduct" includes but is not limited to any of the following acts or omissions: any dishonorable, unethical, or other conduct likely to deceive, defraud, or harm the public

Spraga appealed that decision. The Superior Court, on appeal, found no evidence to support a finding of public harm.[69] Dr. Spraga's expert witnesses testified to the absence of public harm, the State presented no argument of public harm, and the Hearing Officer did not cite facts that supported a finding of public harm. The *Spraga* Court, therefore, concluded that Dr. Spraga did not violate 24 Del C. § 1731(b)(3).

Dr. Spraga also appealed the Board's conclusion that she violated Board Rule 8.1.16—prohibiting "any other act tending to bring discredit upon the profession."[70] The Court determined that Dr. Spraga was not given fair notice and an opportunity to be heard because the Board conceived her violation *post hoc*, privately. Therefore, the Board's conclusion that Dr. Spraga violated Board Rule 8.1.16 could not stand.[71] Upon finding no violations the Superior Court remanded the matter to the Board for proceedings in light of the rulings therein.

In light of *Spraga* Ms. Francis and Ms. DeBenedictis submitted supplemental briefs arguing that collateral estoppel requires the nurses' appeal be sustained. The nurses argue the *Spraga* court concluded that Dr. Spraga was not required to overrule the pharmacists. Therefore, *Spraga* compels that the nurses

---

[69] *Spraga v. Delaware Bd. of Med. Licensure & Discipline*, 2017 WL 3396490 (Del. Super., Aug. 7, 2017).
[70] Delaware Board of Medical Licensure and Discipline Rule 8.1.16.
[71] *Spraga*, 2017 WL 33964900 at *6.

14

were not required to overrule the pharmacists or the doctor. Furthermore, the nurses argue that denying the nurses' appeal would be irreconcilable with the *Spraga* decision because the basis for the nurses' and Dr. Spraga's discipline was the same and Dr. Spraga's discipline was vacated.

The State submits that the doctrine of collateral estoppel does not apply. According to the Board, the *Spraga* Court focused on whether there was substantial evidence to show that Dr. Spraga violated the Board of Medical Practice's licensing laws. Therefore, such a decision could not be imputed to the nurses because their conduct and applicable laws were different; the issue litigated and determined was different; and the valid and final judgment applied to Dr. Spraga, not the nurses. The Board also argues that *Spraga* is not controlling or persuasive because part of the decision was based on Dr. Spraga's lack of notice and opportunity to be heard. Lastly, the Board argues that *Spraga* should not dictate the result because the nurses were more engaged and subject to different licensing and standards.

The Court does not find that collateral estoppel dictates the result. However, the *Spraga* decision informs this Court's decision. The *Spraga* Court found that the Hearing Officer's "conclusion that Dr. Spraga engaged in conduct 'harmful to

15

the public' was not supported by the evidence."[72] Here too there is no evidence to show that the nurses engaged in harmful conduct.

## B. The Hearing Officer's Decision is Not Supported by Substantial Evidence Because There Are No Facts in the Record to Show That the Act Was Harmful.

The facts in this case are ugly. The idea of administering pills that had an "adventure" through a prison sharps container is unpleasant. However, the Court is concerned not with optics, but with evidence, and the evidence—or lack thereof—supports the nurses' contention that there was no risk of harm to the patient. The only evidence of "risk of harm" was presented by the nurses' witnesses.[73] All three confirmed the absence of harm, and the two experts testified that they would have ingested the wasted pills themselves. The State, however, presented no evidence of harm and the Hearing Officer, in his findings of fact, cited nothing for the proposition that administering wasted pills caused or was likely to cause harm. Therefore, the Court finds no substantial evidence of harm, a required element of the nurses' violations and necessary component of the board's decision.

Each of the three Board Regulations Ms. Francis and Ms. DeBenedictis were found to have violated require evidence of harm. Without harm a violation cannot

---

[72] *Spraga*, 2017 WL 33964900 at *5.
[73] Dr. Axelson, Kathryn Wild, and Dr. Spraga, who recounted what the treating physician had written.

16

stand. Likewise, the Hearing Officer's reasoning for the violations—that the nurses should have exercised independent judgment—is based on harm. The exercise of independent judgment is meant to safeguard the patient from harm. If harm is not possible, requiring that the nurses exercise independent judgment to prevent harm is an unnecessary redundancy.

The nurses were first found to have violated Bd. Reg. 10.4.1, "[n]urses whose behavior fails to conform to legal and accepted standards of the nursing profession *and who thus may adversely affect the health and welfare of the public* may be found guilty of unprofessional conduct."[74] To violate 10.4.1 an adverse effect—harm—to the health and welfare of the public is required. Here, neither the State nor the Hearing Officer cited any evidence of harm and the nurses' witnesses in fact testified to the lack thereof. A violation of 10.4.1, therefore, cannot be sustained.

The Hearing Officer found the nurses in violation of Bd. Reg. 10.4.1 because they failed "to exercise independent judgment and either object to or refuse to participate in returning the Sovaldi tabs to the inmate's count." However, that conclusion is not supported by anything more than supposition. The Hearing Officer offers no code, statute, regulation, or any basis whatsoever for such a finding. Moreover, the purpose behind exercising independent judgment is to

---

[74] Emphasis added.

prevent harm. Here, there is no evidence of harm therefore the was no independent judgment basis for the nurses to object to or refuse to participate in returning the Solvaldi pills to the inmate's count. The Court finds that the record lacks substantial evidence to support the violation. Therefore Ms. Francis' and Ms. DeBenedictis' violations of Bd. Reg. 10.4.1 cannot stand.

Ms. Francis and Ms. DeBenedictis next were found to have violated Bd. Reg. 10.4.2.14, "[f]ailing to take appropriate action to safeguard a patient from unethical health care practice." Like the previous Board Regulation, 10.4.2.14 contains a harm element; it seeks to prevent harm by safeguarding the patient from unethical health care practice. A violation of 10.4.2.14, however, cannot follow because no evidence of harm to the patient is offered. To hold otherwise—to hold one accountable for unethical practice where no harm has occurred—would allow form to prevail over substance.

In particular, the Hearing Officer found that the nurses acted unethically because they failed to conform to "accepted professional standards of conduct" by not exercising independent judgment and returning the wasted pills to the inmate's count.[75] As noted there is no evidence of harm, therefore exercising independent judgment to refuse to return the Solvaldi pills to the inmate's count would have been an unwarranted exercise of that judgment. The Board's decision, therefore, is

---

[75] Francis Recommendation of Chief Hearing Officer at 32.

not supported by substantial evidence and the Court finds that the nurses did not violate Bd. Reg. 10.4.2.14.

Ms. Francis and Ms. DeBenedictis were also found in violation of Bd. Reg. 10.4.2.28, "[fa]iling to take appropriate action or to follow policies and procedures in the practice situation designed to safeguard the patient."[76] This regulation, like the other two, requires evidence of harm. The actions, policies, and procedures are meant to safeguard against something, without harm 10.4.2.28 would be superfluous. Therefore, because no evidence of harm has been cited and the nurses' witnesses testified as to the absence of harm, the violation cannot be sustained.

Specifically, the Hearing Officer found that the nurses failed to take appropriate action—exercise independent nursing judgment—designed to safeguard the patient.[77] The Court has found no evidence of harm or risk of harm to the patient. Thus, there was no independent judgment basis for the nurses to proceed differently than directed. Consequently, the Board's conclusion is not supported by substantial evidence on the record and the Court finds that the nurses did not violate Bd. Reg. 10.4.2.28.

## VI. CONCLUSION

---

[76] Francis Recommendation of Chief Hearing Officer at 33.
[77] *Id.*

The Court finds that the Board's decision was not supported by substantial evidence. Therefore, the decision of the Board is hereby **REVERSED**.

**IT IS SO ORDERED.**

Ferris W. Wharton, Judge